STATE OF NORTH CAROLINA v. RODNEY LEE MONTGOMERY

No. 265A90-2

(Filed 8 September 1995)

### 1. Homicide § 230 (NCI4th)— first-degree murder—sufficiency of evidence

There was substantial evidence to support findings that defendant was the perpetrator of the crimes charged, including first-degree murder, where the State's evidence showed that about one hour before the victim's body was found, defendant

STATE v. MONTGOMERY

[341 N.C. 553 (1995)]

was seen in the parking lot next to the apartment in which the crimes were committed; the police found pubic hairs consistent with those of defendant in front of and on the sofa and love seat in the victim's apartment; defendant lived with his sister not far from the victim's apartment; the murder weapon, a butcher knife, was found in a public parking lot located between the apartment complex where the victim lived and the housing area where defendant was residing at the time of the murder; the butcher knife contained human blood and fibers consistent with the fibers taken from the sweatshirt the victim was wearing at the time of her death; and a fingerprint lifted from a lens of the victim's eyeglasses found in the apartment matched one of defendant's fingerprints.

**Am Jur 2d, Homicide §§ 425 et seq.**

## 2. Burglary and Unlawful Breakings § 57 (NCI4th)— first-degree burglary—sufficiency of evidence

There was substantial evidence to support findings that defendant was the perpetrator of the crimes charged, including first-degree burglary, where the State's evidence showed that about one hour before the victim's body was found, defendant was seen in the parking lot next to the apartment in which the crimes were committed; the police found pubic hairs consistent with those of defendant in front of and on the sofa and love seat in the victim's apartment; defendant lived with his sister not far from the victim's apartment; the murder weapon, a butcher knife, was found in a public parking lot located between the apartment complex where the victim lived and the housing area where defendant was residing at the time of the murder; the butcher knife contained human blood and fibers consistent with the fibers taken from the sweatshirt the victim was wearing at the time of her death; and a fingerprint lifted from a lens of the victim's eyeglasses found in the apartment matched one of defendant's fingerprints.

**Am Jur 2d, Burglary § 45.**

## 3. Robbery § 52 (NCI4th)— armed robbery—sufficiency of evidence

There was substantial evidence to support findings that defendant was the perpetrator of the crimes charged, including

robbery, where the State's evidence showed that about one hour before the victim's body was found, defendant was seen in the parking lot next to the apartment in which the crimes were committed; the police found pubic hairs consistent with those of defendant in front of and on the sofa and love seat in the victim's apartment; defendant lived with his sister not far from the victim's apartment; the murder weapon, a butcher knife, was found in a public parking lot located between the apartment complex where the victim lived and the housing area where defendant was residing at the time of the murder; the butcher knife contained human blood and fibers consistent with the fibers taken from the sweatshirt the victim was wearing at the time of her death; and a fingerprint lifted from a lens of the victim's eyeglasses found in the apartment matched one of defendant's fingerprints.

**Am Jur 2d, Robbery § 64.**

4. **Rape and Allied Sexual Offenses § 120 (NCI4th)— attempted rape—sufficiency of evidence**

There was substantial evidence to support findings that defendant was the perpetrator of the crimes charged, including attempted first-degree rape, where the State's evidence showed that about one hour before the victim's body was found, defendant was seen in the parking lot next to the apartment in which the crimes were committed; the police found pubic hairs consistent with those of defendant in front of and on the sofa and love seat in the victim's apartment; defendant lived with his sister not far from the victim's apartment; the murder weapon, a butcher knife, was found in a public parking lot located between the apartment complex where the victim lived and the housing area where defendant was residing at the time of the murder; the butcher knife contained human blood and fibers consistent with the fibers taken from the sweatshirt the victim was wearing at the time of her death; and a fingerprint lifted from a lens of the victim's eyeglasses found in the apartment matched one of defendant's fingerprints.

**Am Jur 2d, Rape §§ 88 et seq.**

**Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.**

**5. Evidence and Witnesses § 1873 (NCI4th)— fingerprints— impression at time crime committed—sufficiency of evidence**

The State submitted substantial evidence of circumstances from which the jury could find in a prosecution for murder, burglary, robbery, and attempted rape that defendant's fingerprints could only have been impressed at the time the crimes charged were committed where the State's evidence showed that the victim was wearing her eyeglasses all day on the day the crimes were committed; the victim was studying or reading most of that day; she was reading when the group left at around 10:00 p.m. for a party, leaving her alone in the apartment; the furniture was in order and the victim was sitting on the sofa with her eyeglasses on, reading the newspaper when the group left the apartment; when the group returned approximately an hour later, the apartment was in disarray, the victim's lifeless body was lying on the floor away from the sofa, which had been moved, and her eyeglasses were on the coffee table; no one else was in the apartment; and defendant's fingerprint was found on the inside lens of the victim's eyeglasses. This evidence, disclosing the circumstances under which the eyeglasses were found, when combined with other testimony placing defendant in the vicinity of the victim's apartment, constitutes substantial evidence from which the jury could find that defendant's fingerprints could only have been impressed on the lens between the hours of 10:00 p.m. and 11:05 p.m. Since the evidence also showed that the crimes were committed during the same period, the fingerprint evidence logically tends to show that defendant was present and participated in the commission of the crimes.

**Am Jur 2d, Evidence §§ 569, 1482.**

**6. Evidence and Witnesses § 1870 (NCI4th)— fingerprint cards—on file before arrest**

There was no error in a prosecution for first-degree murder, burglary, robbery, and attempted rape in the admission of testimony that an expert had compared a fingerprint from the crime scene with a fingerprint card from defendant on file before his arrest. Defendant's use of the fingerprint expert's report opened the door and created confusion which the State could clear up by introducing evidence that the report was based on a ten-print card that was on file prior to defendant's arrest for this crime.

**Am Jur 2d, Evidence §§ 95, 569.**

**7. Burglary and Unlawful Breakings § 165 (NCI4th)— first-degree burglary—misdemeanor breaking or entering—evidence not sufficient**

The trial court did not err by not submitting a charge of misdemeanor breaking or entering to the jury in a first-degree burglary prosecution. Although the indictment for first-degree burglary charged that defendant broke into and entered the victim's apartment with the intent to commit larceny and rape and defendant contended that the court should have instructed on misdemeanor breaking or entering because substantial evidence was presented from which the jury could have inferred that defendant possessed some intent other than to commit larceny, the question is whether there was any evidence of misdemeanor breaking or entering. The evidence was clear and positive that defendant entered the apartment with the intent to commit larceny, and the fact that he also may have intended to commit rape and murder does not constitute evidence that he entered without the intent to commit a felony.

**Am Jur 2d, Burglary §§ 67, 69.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Lamm, J., at the 25 October 1993 Criminal Session of Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed on 2 November 1994. Heard in the Supreme Court 20 June 1995.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant, Rodney Lee Montgomery, was tried capitally upon proper indictments for first-degree murder, robbery with a dangerous weapon, first-degree burglary, and attempted first-degree rape. The jury found defendant guilty of first-degree murder on theories of both premeditation and deliberation and felony murder, first-degree burglary, robbery with a dangerous weapon, and attempted first-degree rape.

After a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury voted on the issues relating to aggravating and mitigating circumstances but was unable to reach a unanimous decision as to Issue Four and made no recommendation as to punishment. Judge Lamm then sentenced defendant to life imprisonment for the first-degree murder conviction. Defendant was sentenced to additional consecutive prison terms of fifty years for first-degree burglary, forty years for robbery with a dangerous weapon, and twenty years for attempted first-degree rape. Defendant raises three assignments of error on this appeal.

The State's evidence at defendant's trial tended to show the following facts and circumstances: On Saturday, 21 January 1989, Kimberly Piccolo, a student at the University of North Carolina in Charlotte (UNC-C), and her three roommates decided to invite several friends who lived in the dormitory to their apartment for a cookout. The apartment complex, which was located near the university campus, was primarily occupied by students. Piccolo studied with one of her roommates in the dining area until 4:00 p.m. In the late afternoon, Piccolo left the apartment. Upon returning to the apartment, she assisted her roommates in preparing food. They used a large chopping knife to cut vegetables. Afterwards, one roommate left the knife in the sink.

About an hour before the cookout, one roommate saw Piccolo coming out of the bathroom upstairs, where she had just taken a shower. Piccolo was dressed in her underpants. Later, at the cookout, she was dressed in sweatpants and a pink or red sweatshirt.

Guests began to arrive at approximately 8:30 p.m., and the last guest arrived at approximately 9:30 p.m., after the others had already eaten. Piccolo ate with the others, but most of the evening she sat on the sofa watching television while the others were at the table and in the kitchen. Everyone at the cookout consumed wine and beer with dinner, except for Piccolo who did not drink.

The group left at approximately 10:00 p.m. to walk to a party held at an adjoining apartment complex. They invited Piccolo to come along, but she said that she was not interested and needed to study. As the group left, Piccolo was on the sofa with her eyeglasses on, reading the newspaper. She was wearing a pink or red sweatshirt, sweatpants, and socks. At that time, the sectional sofa was pushed together into an L-shape, and the coffee table was centered with the sofa. Although the group had been in and out of the sliding balcony

door during the cookout, it was closed when they left for the party. However, the last person out the front door did not lock it.

That same evening around 10:00 p.m., Christy Webb, a neighbor of Piccolo, rode up to her apartment with her boyfriend, Steve Aumer. As Webb was walking away from her car, she was approached by a man who was wearing an over-sized dark-green Army jacket to which an identification badge was attached. The man asked Webb for change for a twenty-dollar bill. Webb stated that she did not have any change. The man then asked if she had any change upstairs in her apartment. At that point, Aumer got out of the car and told the man that Webb did not have any change. Aumer testified at trial that defendant was the man he saw in the parking lot that evening.

At approximately 11:05 p.m., the group returned to the apartment. Upon entering, they noticed the contents of several purses scattered on the floor in front of the door and on the kitchen counter. Only the living room light was on. While others began picking up the items on the floor, two of Piccolo's roommates went upstairs to their respective rooms. One roommate immediately discovered the body of Kimberly Piccolo lying on the floor next to her bed, and she screamed. The others ran to join her and saw the body. One roommate called the police while a guest checked Piccolo's body for a pulse. Two male guests checked all three floors to ascertain that no one else was in the apartment. Two other guests ran out into the parking lot and remained there until the police arrived.

When Piccolo's body was found, she was dressed in a sweatshirt, sweatpants which were inside out, and socks, but she was not wearing panties. The sofa on which Piccolo had been sitting when her roommates left had been moved out of place. The officers found a pair of panties lying on the sofa. A butcher knife was missing from the kitchen. Piccolo's eyeglasses were found on the coffee table. A fingerprint, which matched a print of defendant's left ring finger, was lifted from one of the lenses. Five pubic hairs, which were consistent with those of defendant, were found in front of and on the sofa and love seat. The police later found the missing butcher knife in a parking lot located between Piccolo's apartment and the house owned by defendant's sister; defendant was staying in this house with his sister at the time of the murder. Blood and fibers consistent with fibers from Piccolo's sweatshirt were on the knife.

On 10 February 1989, an officer showed Aumer a photographic lineup and interviewed him. Aumer immediately picked defendant's

photograph out of the lineup as the man who had spoken to Christy Webb. At trial, Aumer identified defendant as that man.

The police found that defendant's brother owned a green Army field jacket similar to the one defendant was seen wearing when he approached Christy Webb. Defendant's brother also owned a UNC-C Worker's ID card, which was of the type that could be attached to a lapel or pocket. This ID card was similar to the one which Aumer described as being attached to the jacket defendant was wearing when defendant approached Christy Webb.

An autopsy showed that Piccolo had received nine stab wounds that were clustered in her chest, arm, back, and abdomen and several defensive wounds on her hands. One stab wound went completely through her right hand. James M. Sullivan, M.D., the State's expert witness and the forensic pathologist who performed the autopsy on Piccolo's body, testified that the victim died from blood loss caused by the multiple stab wounds. In Dr. Sullivan's opinion, Piccolo probably died within fifteen minutes after receiving the most serious of the wounds. Dr. Sullivan testified that the knife found in the parking lot was consistent with the wounds the victim received. Another expert witness examined trace evidence collected at the apartment. In his opinion, four of the hairs taken from in front of and on the sofa and love seat were consistent in every degree with defendant's pubic hair.

Defendant at trial presented alibi evidence. Several of defendant's relatives testified that he was with them the entire evening of 21 January 1989. Further, defendant presented testimony by one witness that he had seen black males come and go from the apartment in the past. Defendant did not testify.

[1-4] Defendant first assigns as error the trial court's denial of his motion to dismiss all charges against him for insufficiency of the evidence. Defendant does not contend that there is insufficient evidence to show that the crimes charged were committed. Instead, defendant contends that the State presented insufficient evidence to support a finding beyond a reasonable doubt that he was the perpetrator of the offenses. Therefore, defendant contends that the convictions of murder, burglary, robbery, and attempted rape must be reversed.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.

*State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). The determination of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383.

"[C]ontradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653. "The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged." *Vause*, 328 N.C. at 237, 400 S.E.2d at 61.

In the present case, there was substantial evidence to support findings that defendant was the perpetrator of the crimes charged. The State's evidence showed that about one hour before the victim's body was found, defendant was seen in the parking lot next to the apartment in which the crimes were committed. The police found pubic hairs consistent with those of defendant in front of and on the sofa and love seat in the victim's apartment. Defendant lived with his sister not far from Piccolo's apartment. The murder weapon, a butcher knife, was found in a public parking lot located between the apartment complex where the victim lived and the housing area where defendant was residing at the time of the murder. The butcher knife contained human blood and fibers consistent with the fibers taken from the sweatshirt the victim was wearing at the time of her death. A fingerprint lifted from a lens of the victim's eyeglasses found in the apartment matched one of defendant's fingerprints.

**[5]** Defendant further contends that the State failed to prove that the fingerprint found on the victim's eyeglasses was impressed at the time the crimes were committed. This Court has considered the sufficiency of fingerprint evidence to identify defendant as the perpetrator in a number of cases. Where the State has relied solely on fingerprint evidence to establish that the defendant was the perpetrator of the crimes charged, this Court has held that the defendant's motion to dismiss should have been granted. *See, e.g., State v. Bass*, 303 N.C. 267, 278 S.E.2d 209 (1981) (where the only evidence tending to show that the defendant was ever at the scene of the crime was four of defendant's fingerprints found on the frame of a window screen on the victim's home, the State produced no evidence tending to show when they were put there, and the defendant offered evidence that he was on the premises at an earlier date); *State v. Scott*, 296 N.C. 519, 251 S.E.2d 414 (1979) (where the only evidence tending to show that defendant was ever in the victim's home was a thumbprint found on a metal box in the den on the day of the murder, and the niece of the deceased testified that during the week, she had no opportunity to observe who came to the house on business or to visit with her uncle); *State v. Smith*, 274 N.C. 159, 161 S.E.2d 449 (1968) (where the State had no evidence tending to show that the fingerprint of the defendant found on the victim's wallet could only have been impressed at the time the money was allegedly stolen from her wallet); *State v. Minton*, 228 N.C. 518, 46 S.E.2d 296 (1948) (where the defendant's fingerprint was found on broken glass from the front door of a store that had been unlawfully entered, and the defendant was lawfully in the store on the day the crime was committed).

On the other hand, where the State presented other evidence tending to show that the fingerprints could only have been impressed at the time the crimes were committed, this Court has found that the case was properly taken to the jury. *See, e.g., State v. Irick*, 291 N.C. 480, 231 S.E.2d 833 (1977) (where the defendant's fingerprint was found on the windowsill of the victim's house, the defendant was apprehended near the scene of the crime, and other evidence tied defendant to the break-in); *State v. Miller*, 289 N.C. 1, 220 S.E.2d 572 (1975) (where the State's evidence established that the defendant's right thumbprint was found on the lock at the scene of the crime, no other fingerprints were found at the scene, and the defendant falsely stated to the police that he had never been in the building which was broken into); *State v. Jackson*, 284 N.C. 321, 200 S.E.2d 626 (1973) (where the State's evidence showed that the defendant's fingerprint

was lifted from the lower sash of the window inside the kitchen of the apartment occupied by the victim, the victim identified the defendant's voice, and nothing appeared in the record to show that the defendant had ever been in the apartment occupied by the victim prior to the morning of the crimes charged); *State v. Foster*, 282 N.C. 189, 192 S.E.2d 320 (1972) (where the victims testified that they did not know the defendant and had never given him permission to enter their home and the defendant testified he had never been in their home, and the evidence showed that the flower pot where the defendant's fingerprints were found had been frequently washed); *State v. Tew*, 234 N.C. 612, 68 S.E.2d 291 (1951) (where the defendant's fingerprints were found at the scene of the crime and the testimony of the owner and operator of the service station tended to show that she had not seen the defendant before the date of the crime); *State v. Reid*, 230 N.C. 561, 53 S.E.2d 849 (where the defendant was never lawfully in the apartment of the victim, and the defendant's fingerprint was present on the inside of the window sill in the sleeping quarters of the victim), *cert. denied*, 338 U.S. 876, 94 L. Ed. 537 (1949).

As Justice Huskins succinctly stated in *State v. Miller*:

These cases establish the rule that testimony by a qualified expert that fingerprints found at the scene of the crime correspond with the fingerprints of the accused, when accompanied by substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed, is sufficient to withstand motion for nonsuit and carry the case to the jury. The soundness of the rule lies in the fact that such evidence logically tends to show that the accused was present and participated in the commission of the crime.

What constitutes substantial evidence is a question of law for the court. What the evidence proves or fails to prove is a question of fact for the jury.

289 N.C. at 4, 220 S.E.2d at 574.

In the present case, the State submitted substantial evidence of circumstances from which the jury could find that defendant's fingerprints could only have been impressed at the time the crimes charged were committed. The State's evidence showed that the victim was wearing her eyeglasses all day on the day the crimes charged were committed; the victim was studying or reading most of that day; and she was reading when the group left at around 10:00 p.m. for the

party, leaving her alone in the apartment. When the group left the apartment, the furniture was in order and the victim was sitting on the sofa with her eyeglasses on, reading the newspaper. When the group returned approximately an hour later, the apartment was in disarray, the victim's lifeless body was lying on the floor away from the sofa, which had been moved, and her eyeglasses were on the coffee table. No one else was in the apartment. Defendant's fingerprint was found on the inside lens of the victim's eyeglasses. This evidence, disclosing the circumstances under which the eyeglasses were found, when combined with other testimony placing defendant in the vicinity of the victim's apartment, constitutes substantial evidence from which the jury could find that defendant's fingerprints could only have been impressed on the lens between the hours of 10:00 p.m. and 11:05 p.m. Since the evidence also showed that the crimes charged were committed during the same time period, the fingerprint evidence logically tends to show that defendant was present and participated in the commission of the crimes. Thus, we hold that the evidence was properly admitted and the trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence.

[6] Defendant next assigns as error the trial court's admission of evidence which informed the jury that defendant's fingerprints were on file before he was arrested or fingerprinted for these crimes. Defendant contends that this evidence was both "irrelevant and grossly prejudicial."

During its case-in-chief, the State introduced the testimony of a fingerprint expert that a latent lift taken from the victim's eyeglasses matched the print of defendant's left ring finger as it appeared on a Charlotte-Mecklenburg ten-print card prepared by the witness on 13 March 1989 at the Mecklenburg County jail. On cross-examination, defendant questioned the expert concerning a report which the expert had prepared on 1 February 1989. This report was based on a ten-print card which was prepared prior to defendant's arrest for the crimes here involved. Thereafter, on redirect examination of this witness, the court permitted the State to introduce, over defendant's objection, evidence that the expert had occasion to examine a print from defendant prior to 13 March 1989 and to compare the latent lift from the crime scene with a ten-print card which was "previously on file."

Defendant contends that he was prejudiced by the court allowing the jury to hear evidence that his fingerprints were already on file

prior to his arrest for these crimes. Defendant further contends that the evidence was not relevant to any issues at trial and amounted to inadmissible character evidence under N.C.G.S. § 8C-1, Rule 404. Defendant argues that the only possible probative value of the evidence that a ten-print card of defendant's fingerprints was already on file prior to the witness' preparation of such card on 13 March 1989 was to suggest to the jury that defendant had been arrested and fingerprinted on a prior occasion and for another crime. Defendant contends that this testimony was impermissibly introduced as evidence of defendant's character trait or of prior crimes to show that he acted in conformity therewith on this particular occasion. We disagree.

In *State v. Albert*, we held that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such later evidence would be incompetent or irrelevant if it had been offered initially." 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). We hold here that defendant opened the door to the State's introduction of evidence regarding the report prepared on 1 February 1989, which compared the latent prints found at the crime scene to defendant's known fingerprints already on file before defendant's fingerprints were taken upon his arrest for the crimes at issue here. Since defendant used this report to explain to the jury the number of latent prints lifted and the number matching defendant's known prints, the prosecutor could on redirect examination introduce evidence that at least one print of value did match defendant's known prints even at the time the report was originally generated on 1 February 1989, prior to defendant's arrest for the crimes at issue here. Defendant's use of the fingerprint expert's report created confusion which the State could clear up by introducing evidence that the report was based on a ten-print card that was on file prior to 13 March 1989.

In *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994), the defendant was on trial for murder and had previously been convicted of attempted rape. On direct examination of the defendant, the defendant's counsel selectively read those portions of the trial transcript that were misleading and created inferences favorable to the defendant. We held that it was not error to allow the prosecutor to present additional portions of the transcript, including details of the attempted rape, to clear up any misleading information. *See also State v. Garner*, 330 N.C. 273, 410 S.E.2d 861 (1991) (where the defendant opened the door to evidence of prior convictions for violent acts when he presented evidence that

tended to show that he was level-headed and that the victim was violent); *State v. Small,* 301 N.C. 407, 272 S.E.2d 128 (1980) (where the defendant opened the door when his testimony left a false impression on the jury that could only be cleared up by allowing the State to admit otherwise inadmissible polygraph evidence).

Accordingly, we conclude that it was not error for the trial court to admit the evidence of the ten-print card that was previously on file. Defendant opened the door to the introduction of this evidence by questioning the expert witness regarding the report which was based on that fingerprint card. This testimony may have confused the jury since the fingerprint card referred to on direct examination was prepared subsequent to the report which was the subject of cross-examination. Thus, evidence of the ten-print card in question was admissible to clear up any confusion created by the introduction of evidence of the report by defendant on cross examination of the expert witness.

[7] In his last assignment of error, defendant contends misdemeanor breaking or entering should have been submitted as a possible verdict to the jury. This assignment of error has no merit. First-degree burglary is the breaking or entering of an occupied dwelling at night with intent to commit a felony therein. N.C.G.S. § 14-51 (1986); *State v. Noland,* 312 N.C. 1, 13, 320 S.E.2d 642, 650 (1984), *cert. denied,* 469 U.S. 1230, 84 L. Ed. 2d 369, *reh'g denied,* 471 U.S. 1050, 85 L. Ed. 2d 342 (1985). If at the time of a breaking and entering a person does not possess the intent to commit a felony therein, he may only properly be convicted of misdemeanor breaking or entering, a lesser included offense of first-degree burglary. *State v. Peacock,* 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985).

An indictment for burglary need not specify the particular felony that the accused intended to commit at the time of the breaking or entering if "the indictment . . . charges the offense . . . in a plain, intelligible, and explicit manner and contains sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense," and it "informs the defendant of the charge against him with sufficient certainty to enable him to prepare his defense." *State v. Worsley,* 336 N.C. 268, 443 S.E.2d 68 (1994); *see* N.C.G.S. 15A-924(a)(5) (Supp. 1993). The intent to commit the felony must be present at the time of entrance, and this can but need not be inferred from the defendant's subsequent actions. *Peacock,* 313 N.C. at 559, 330 S.E.2d at 193.

The indictment for first-degree burglary charged that defendant broke into and entered the apartment of Kimberly Piccolo "with the intent to commit a felony therein, to wit: larceny and rape." The jurors were instructed that, in order to convict defendant of first-degree burglary, they must find that at the time of the breaking and entering, defendant intended to commit larceny. No lesser included offenses were submitted to the jury as possible verdicts, despite defendant's timely request. Defendant contends that because substantial evidence was presented from which the jury could have inferred that defendant possessed some intent at the time of the break-in other than to commit larceny, the judge should have instructed the jury on the lesser included offense of misdemeanor breaking or entering. Defendant contends that the failure to do so warrants a new trial.

This Court has said that a trial judge must instruct the jury on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction, and that the failure to do so is reversible error which is not cured by a verdict finding the defendant guilty of the greater offense. *State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514 (1986). Only when the "evidence is clear and positive as to each element of the offense charged" and there is no evidence supporting a lesser included offense may the judge refrain from submitting the lesser offense to the jury. *Peacock*, 313 N.C. at 558, 330 S.E.2d at 193.

Defendant, relying on *State v. Gray*, 322 N.C. 457, 368 S.E.2d 627 (1988), contends that an instruction should have been submitted to the jury for the lesser included offense of misdemeanor breaking or entering since the evidence revealed that, in addition to money having been taken from a purse inside the residence, Kimberly Piccolo was assaulted and stabbed to death. Further, the condition of the victim's clothing and the presence of pubic hairs consistent with those of defendant, which were found in front of the sofa and on the love seat, was some evidence tending to show that the assailant attempted and intended to rape the victim. Thus, defendant contends that from the foregoing evidence, the jury could have rationally found that, at the time of the breaking and entering, defendant had the intent to commit rape or the intent to murder. The question in this case is whether there was any evidence of misdemeanor breaking or entering.

In *State v. Gray*, the defendant was tried for first-degree rape and felonious breaking or entering. The victim testified that she noticed

that the door to the back porch was open, her pocketbook was on the ironing board on the back porch, and her wallet was lying open beside it. She then testified that the defendant emerged from behind the door, holding a small handgun, and forced her to have sexual intercourse with him. The defendant testified that he had consensual sexual intercourse with the alleged victim. The victim testified that as he left her house, the defendant handed her some money and said, "here, I'm not a thief." *Id.* at 458, 368 S.E.2d at 628. This Court held that the misdemeanor breaking or entering charge should have been submitted to the jury since the defendant's testimony created conflicting evidence about whether a rape had occurred, and the victim's testimony created a question of whether the defendant intended to commit larceny. A new trial was granted because "[t]he jury was not compelled to find from the evidence that the defendant intended to commit rape at the time he entered the building." *Id.* at 461, 368 S.E.2d at 630. Because the evidence in *Gray* supported a finding of misdemeanor breaking or entering, the trial court erred in not submitting the lesser offense to the jury, and this error was not cured by a verdict finding the defendant guilty of the greater offense.

In the present case, the State's evidence that defendant stole money from a purse after he entered the apartment was substantial evidence that he had the intent to commit larceny when he entered the apartment. See *id.* at 461, 368 S.E.2d at 629 ("[E]vidence of what a defendant does after he breaks and enters a house is circumstantial evidence of his intent at the time of the breaking and entering."). The State's evidence at trial showed that the front door of the apartment and the sliding balcony door were closed and that defendant broke into or entered the apartment while it was occupied by the victim between 10:00 p.m. and 11:05 p.m. *See State v. Accor*, 277 N.C. 65, 175 S.E.2d 583 (1970) (where this Court recognized that the usual purpose of burglarizing a dwelling house at night is theft). The sofa in the living room was in disarray after the murder, suggesting a struggle or that the victim was surprised by defendant when he entered the apartment. The contents of several purses were scattered in the doorway to the apartment and in the victim's bedroom, and money was missing. Thus, the evidence was clear and positive that defendant entered the apartment with the intent to commit larceny, and the fact that he also may have intended to commit the felonies of rape and murder does not constitute evidence that he entered the apartment without the intent to commit a felony therein.

Accordingly, we conclude that there was no evidence supporting a finding of misdemeanor breaking or entering in the present case. Therefore, the trial court did not err by not submitting the misdemeanor breaking or entering charge to the jury.

For the foregoing reasons, we conclude that defendant received a fair trial free of prejudicial error.

NO ERROR.