STATE OF NORTH CAROLINA
v.
RODNEY SANTONIO HOPPER, JR.
No. COA06-313
North Carolina Court of Appeals
Filed February 20, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.
Michael E. Casterline for Defendant.
McGEE, Judge.
Rodney Santonio Hopper, Jr. (Defendant) was convicted of attempted second degree sexual offense and of taking indecent liberties with a child. The trial court sentenced Defendant to a minimum of 103 months and a maximum of 133 months in prison on the attempted second degree sexual offense charge, and a minimum of 21 months and a maximum of 26 months in prison on the indecent liberties with a child charge. Defendant appeals.
Defendant filed a request for voluntary discovery and motion for discovery on 30 December 2002, in which Defendant requested "any relevant written or recorded statements made by . . . Defendant, or copies thereof[.]" Defendant also "specifically request[ed] that, in addition to any transcribed statements by Defendant, a copy of Defendant's tape recorded statement be produced [and] that counsel for Defendant be allowed to listen to the same and copy the same." The State responded on 4 April 2003 by providing Defendant with twenty pages of discovery, and a certificate acknowledging the State's continuing duty of disclosure. The materials provided by the State did not include a copy of a videotaped statement given to the police by Defendant, or a transcript of that statement.
The morning Defendant's trial was scheduled to begin, Defendant filed a motion requesting the trial court to: (1) sanction the State for failing to comply with Defendant's discovery request; (2) suppress any and all statements made by Defendant to the police; (3) conduct a hearing and order the State to provide Defendant all materials requested; and (4) continue the trial to allow Defendant time to review the materials. Prior to the start of jury selection, the trial court heard Defendant's motion. Defense counsel contended that he was unaware of the existence of the videotaped statement given by Defendant until ten days before trial, and knowledge of the videotaped statement would have altered his trial preparation, and Defendant's decision about whether to accept a plea offered by the State.
Elizabeth Lari (Lari), the assistant district attorney trying the case, stated that she sent a facsimile to defense counsel on 24 May 2004, after the case was transferred to her. The facsimile noted the April 2003 discovery provided by the prior assistant district attorney, and included the following statement: "Please come by my office and make sure you have everything you need for this case which is set for trial in August, as I recall." Lari stated that she received no response from defense counsel until Friday, 30 July 2004, when defense counsel came to her office and reviewed the State's file. Defense counsel marked which documents he wanted for his file, and Lari provided the requested copies on Monday, 2 August 2004. Defense counsel requested a copy of the videotaped statement on 6 August 2004, at which time Lari referred defense counsel to the Shelby Police Department. Defendant's trial was scheduled to begin on 9 August 2004. The parties also disputed whether Defendant had received a copy of the report of the investigating officer. Defense counsel denied receiving the report in the documents provided by the State in April 2003, while the State maintained the report was included in the documents given to Defendant in April 2003.
After hearing arguments from both parties and reviewing the videotaped statement, the trial court concluded that the State did respond to Defendant's request for discovery. The trial court also concluded that Defendant had failed to carry his burden that the discovery provided was not timely or sufficient. Accordingly, the trial court denied Defendant's motion and the case proceeded to trial.
T.I., fifteen years old at the time of the incident, testified for the State that she was living in a small group home in Shelby on 15 August 2002. T.I. testified that Lisa Harper (Harper), an adult who worked at the group home, took T.I. and three other minor female residents of the home shopping for school supplies on 15 August 2002. After buying the school supplies, Harper drove the girls through a nearby neighborhood. Harper dropped the girls off on Logan Street, where several young men were standing, because T.I. said she knew one of the men. All four girls got out of Harper's car and walked to the porch of a house. Defendant got into Harper's car, and the two drove away, leaving the four girls on the porch of the house.
T.I. testified that Harper returned between ten and fifteen minutes later, and Defendant got out of Harper's car. The girls walked to the driver's side window of Harper's car, and Defendant walked to the porch. Defendant then yelled to T.I. to come back to the porch, and she did. One of the other girls, J.L., went with her. Defendant invited T.I. inside, and a woman inside the house began yelling at Defendant and T.I. Defendant suggested that he and T.I. walk down the street.
Defendant and T.I. walked "two houses down" to a two-story gray house, in sight of Harper's car. Defendant told T.I. to wait on the porch while he went inside to talk to his cousin. When Defendant returned to the porch, he grabbed T.I. by her arms and dragged her into the house and up a flight of stairs. Defendant pulled T.I. in to a bedroom at the top of the stairs. T.I. testified that another man, later identified as Christopher Tate (Tate), entered the room a few seconds later and turned off the light. Someone unbuttoned and pulled down her pants and underwear, and then threw her on the bed. Defendant forced T.I. to open her mouth and put his penis in her mouth. At the same time, Tate inserted his penis into her anus. T.I. stated that Defendant "started to stick his penis in my vagina" but was interrupted when someone knocked on the bedroom door. Defendant and Tate ran out of the room and T.I. got dressed and left the house.
T.I. testified that when she left the house, Harper's car was outside. J.L. asked T.I. what was wrong, and T.I. told her she had been raped. Harper drove the girls back to the group home. The girls and Harper decided not to report the incident for fear that Harper would lose her job. After returning to the group home, Harper and the girls left again and returned to Logan Street to "fight" Defendant and Tate, but were unable to locate them. On the way back to the group home, Harper was involved in an automobile collision. The police officer who responded to the accident testified that he drove Harper and the girls back to the group home, but no one mentioned to him what had occurred on Logan Street.
The next morning, T.I.'s social worker brought T.I. to the hospital and T.I. spoke with officers from the Shelby Police Department. A nurse from the hospital testified that she performed a rape kit on T.I. The results of the rape kit did not reveal any physical trauma to T.I.'s body. T.I. took the officers to the two-story gray house after leaving the hospital.
Jerome Moses (Moses) testified that he resided on Logan Street. Moses said Defendant came to Moses' house on 15 August 2002 and asked if Defendant could use Moses' room. After Defendant asked two or three times, Moses agreed. Defendant told Moses he "had a friend he wanted to bring up." When Defendant returned a minute later, Moses said Defendant had a girl with him and that the two walked up the stairs together. Tate arrived and asked where Defendant was. Moses told Tate Defendant was upstairs and Tate went up the stairs. No more than fifteen or twenty minutes later, an individual came to Moses' door asking for a person Moses assumed to be T.I. Moses went upstairs, knocked on the door and said there was someone looking for the girl and she needed to come downstairs.
Detective Carl Duncan (Detective Duncan), with the Shelby Police Department, testified that he interviewed Defendant on 16 August 2002, and that the interview was recorded. Detective Marty Lee Thomas (Detective Thomas), also with the Shelby Police Department, testified that he and another investigator arrived at the emergency room on 16 August 2002 in response to a report of a sexual assault. Detective Thomas took a statement from T.I. After T.I. was released from the hospital, T.I. took Detective Thomas to Logan Street and pointed out the gray house. Detective Thomas testified that he took a statement from Defendant and that the statement was recorded. Over Defendant's objection, the videotape of Defendant was played for the jury.
At the close of the State's evidence, Defendant moved to dismiss each of the charges against him, which the trial court denied. Defendant did not present any evidence. Defendant renewed his motions to dismiss at the close of all the evidence.
At the charge conference, the State requested an instruction on the lesser included offense of attempted second degree sexual offense because of the "dispute in the evidence between [T.I.'s] statement and [Defendant's] statement about whether or not her lips ever touched his penis." Defendant objected to this instruction. The trial court overruled Defendant's objection and included the instruction on attempted second degree sexual offense.
The jury returned a verdict of guilty of attempted second degree sexual offense and guilty of taking indecent liberties with a child.

I. Instruction on Attempted Second Degree Sexual Offense
Defendant first argues that the trial court improperly instructed the jury on attempted second degree sexual offense. Defendant contends that because T.I.'s testimony conflicted with Defendant's videotaped statement to the police, the State has impermissibly advanced inconsistent theories. Defendant argues that had he offered his videotaped statement, the instruction would have been proper, but because the State offered it, it was error. We disagree.
Initially, we note that Defendant failed to file a copy of the videotaped statement with this Court. Although the record contains a statement that "all exhibits offered in evidence are settled as part of the Record on Appeal and will be transmitted to the Court of Appeals in accordance with the Rules of Appellate Procedure," we received no exhibits in this case. Accordingly, we were unable to view Defendant's videotaped statement.
The trial transcript contains some indication of the substance of the videotaped statement. While Detective Thomas was being cross-examined, the following exchange took place:
[Defense counsel]: [I]s there another tape that I didn't see here?
[Witness]: No, that's the only video tape.
[Defense counsel]: Well, there was no admission that [Defendant] had vaginal or anal sex with [T.I.], was there?
[Witness]: No.
[Defense counsel]: In fact, he didn't say she performed oral sex on him, either, did he?
[Witness]: Yes, he did.
[Defense counsel]: You asked him specifically during that interview, "Did you put your penis in her mouth", and he said no, didn't he?
[Witness]: I believe what he said was he forced her head down toward his  his penis, and I don't remember whether  the exact words "in  in her mouth" or not was in there.
[Defense counsel]: You asked him, sir, "Did you put your penis in her mouth?", and he said no, didn't he?
[Witness]: Again, my recollection is that he forced her head down. I don't remember him specifically saying no.
Unfortunately, the above testimony does little to clarify the substance of Defendant's statement to the police contained in the videotaped statement. The premise upon which Defendant's argument is based is that Defendant's statement to the police was inconsistent with the testimony of T.I. Since we cannot properly assess whether the two statements are inconsistent without reviewing the substance of the videotape, our review of this argument is constrained. However, even if we assume, arguendo, as Defendant states in his brief, that the "videotaped statement made by [Defendant] to police . . . established that the sex act was not completed" we still conclude that Defendant's argument is without merit.
In State v. Montgomery, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995), our Supreme Court stated
a trial judge must instruct the jury on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction, and that the failure to do so is reversible error which is not cured by a verdict finding the defendant guilty of the greater offense. Only when the evidence is clear and positive as to each element of the offense charged and there is no evidence supporting a lesser included offense may the judge refrain from submitting the lesser offense to the jury.
(internal citations and quotations omitted). "Such conflicts may arise from evidence introduced by the State, or the defendant. They may arise when only the State has introduced evidence." State v. Thomas, 325 N.C. 583, 594, 386 S.E.2d 555, 561 (1989) (internal citations omitted).
Applying these rules to the present case, the trial court was required to give the instruction on attempted second degree sexual offense. T.I. testified that Defendant forced his penis into her mouth, which would constitute a completed sexual act sufficient to sustain a charge of second degree sexual offense. See N.C. Gen. Stat. §§ 14-27.1(4) and 14-27.5 (2005). According to Defendant's brief, in Defendant's statement to police he said "he tried to have oral sex with [T.I.] but was unsuccessful." Therefore, the evidence is not clear as to whether a sexual act was completed. This conflict required the instruction on attempted sexual offense, and therefore, the trial court properly included this instruction in its charge to the jury. We overrule this assignment of error.

II. Discovery Issue
Defendant next argues the trial court erred by denying his motion to suppress his videotaped statement to the police and failing to impose other sanctions. Defendant argues the State failed to comply with N.C. Gen. Stat. § 15A-903(a)(2) and, as a result, Defendant was prejudiced in that he (1) decided to reject a plea offer from the State; and (2) prepared his trial strategy without knowledge of the videotaped statement.
The version of our discovery statutes which applied at the time of Defendant's trial required the trial court, upon a motion by a defendant, to order the prosecutor
[t]o divulge, in written or recorded form, the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor[.]
N.C. Gen. Stat. § 15A-903(a)(2) (2003). If the trial court determines that a party has not complied with our discovery statutes or with a discovery order, the trial court may impose sanctions, including granting a continuance or a recess, or prohibiting the introduction of the evidence which was not disclosed. N.C. Gen. Stat. § 15A-910 (2003). It is well-established that "[t]he sanction for failure to make discovery when required is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." State v. Herring, 322 N.C. 733, 747-48, 370 S.E.2d 363, 372 (1988). Further, "the statute sets out possible curative actions, [but] it does not require the court to impose any sanction." State v. Alston, 307 N.C. 321, 330, 298 S.E.2d 631, 639 (1983).
In Defendant's initial motion for discovery, he requested that the State "disclose the existence of and permit . . . Defendant to inspect and copy . . . any relevant written or recorded statements made by . . . Defendant[.]" R.6. Defendant also "specifically request[ed] that, in addition to any transcribed statements by Defendant, a copy of Defendant's tape recorded statement be produced [and] that counsel for Defendant be allowed to listen to the same and copy the same." Defendant's specific request suggests that Defendant was aware of the existence of the recorded statement on 30 December 2002. Further, although there was some dispute about the timing, Defendant did receive from the State a copy of an officer's narrative referencing the videotape. Finally, the assistant district attorney contacted Defendant on 24 May 2004 to arrange for defense counsel to review the State's file and ensure Defendant had copies of everything that he wanted. Defense counsel did not respond to this communication until 30 July 2004, twelve days before the trial began.
Even assuming, arguendo, that the State committed a discovery violation, we cannot conclude the trial court abused its discretion in failing to impose sanctions. The trial court conducted a thorough pretrial hearing on Defendant's motion. In its ruling, the trial court noted that after Defendant made his motion for discovery, Defendant did not notice the motion for hearing; therefore no discovery order was entered. The trial court found that the assistant district attorney had contacted defense counsel several months before trial to ensure Defendant had all the items Defendant wanted for trial. After hearing arguments from the State and Defendant, the trial court took a recess to "look at [the issue] a little bit further." After the recess, the assistant district attorney originally assigned to the case told the trial court that he provided the officer's narrative in response to Defendant's original discovery request, and the report referenced the videotaped statement. In light of the thorough treatment of Defendant's argument by the trial court, and the fact that Defendant was either aware, or should have been aware, of the videotaped statement, we overrule this assignment of error.
No error.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).