STATE OF NORTH CAROLINA v. JIMMIE WAYNE LAWRENCE

No. 585A97

(Filed 16 June 2000)

**1. Appeal and Error— preservation of issues—constitutionality of short-form indictments**

Although defendant did not challenge the constitutionality of the short-form indictment used to charge him with first-degree murder at trial, this issue is properly preserved because a challenge to an indictment alleged to be invalid on its face that could deprive the trial court of jurisdiction may be made at any time.

**2. Homicide— first-degree murder—short-form indictments— constitutionality**

Although the short-form indictment used to charge defendant with first-degree murder did not allege elements differentiating the degrees of murder and did not charge the aggravating circumstances that would increase the maximum penalty from life imprisonment to the death penalty, the trial court did not err in concluding the indictment did not violate defendant's right to due process under the Fifth and Fourteenth Amendments because: (1) indictments based on N.C.G.S. § 15-144 are in compliance with both the North Carolina and United States Constitutions; (2) North Carolina case law approves the use of

1

**STATE v. LAWRENCE**

[352 N.C. 1 (2000)]

short-form indictments and there has not been a federal mandate to change that determination; and (3) there is no requirement that the indictment set forth aggravating circumstances under N.C.G.S. § 15A-2000(e) since they are not elements of first-degree murder, but are circumstances to be considered in the jury's recommendation of life imprisonment or death.

**3. Jury— selection—capital sentencing—panel of fewer than twelve jurors—no prejudicial error**

Although the trial court erred in a capital sentencing proceeding by permitting the State to pass a panel of fewer than twelve jurors to defendant in violation of N.C.G.S. § 15A-1214(d), defendant failed to show prejudice because: (1) defendant did not exhaust his peremptory challenges and did not request removal of the one new prospective juror; and (2) defendant was not forced to accept an undesirable juror.

**4. Appeal and Error— preservation of issues—constitutional issue—failure to raise at trial**

Although defendant contends an improper jury selection procedure in his capital sentencing proceeding violated his constitutional right to a fair and impartial jury, defendant did not raise this constitutional issue at trial, and therefore, it was not preserved for appellate review under N.C. R. App. P. 10(b)(1).

**5. Jury— selection—capital sentencing—peremptory challenge—racial discrimination—no prima facie showing**

The trial court did not err in a capital sentencing proceeding by overruling defendant's objection to the State's use of a peremptory challenge to strike from the jury a black prospective juror because: (1) the challenge of an African-American prospective juror when defendant is also an African-American does not, standing alone, establish a prima facie showing of racial discrimination or a Batson violation; (2) although the acceptance by the prosecution of white prospective jurors similarly situated to black prospective jurors who have been peremptorily stricken is a factor to consider in determining purposeful discrimination, defendant cannot pick a single factor and match it to the other jurors since the factors are viewed as a totality; and (3) although the black prospective juror initially indicated he could impose the death penalty, he later expressed uncertainty about his ability to impose the death penalty in light of his religious views.

**6. Criminal Law— denial of complete transcript—narrative form—"substantial equivalent"**

Although the trial court did not comply with the requirements of N.C.G.S. § 7A-450 to provide defendant with a complete transcript of his capital sentencing proceeding since a mechanical malfunction resulted in the elimination of a portion of one detective's testimony and all of a special agent's testimony, defendant is not entitled to any relief as a result of this omission because: (1) the State provided the unrecorded testimony in narrative form, which constitutes an available alternative that is "substantially equivalent" to the complete transcript under N.C. R. App. P. 9(c)(1); (2) the charge conference and jury instructions were fully recorded and available for review; and (3) the missing part of the transcript was not relevant to defendant's defense.

**7. Appeal and Error— preservation of issues—constitutional issue—failure to raise at trial**

Although defendant contends the trial court violated his constitutional rights to present evidence and to confront witnesses against him in a capital sentencing proceeding by not allowing defendant's expert witness to give his opinion as to defendant's state of mind at the time of the homicide, defendant did not raise this constitutional issue at trial, and therefore, it was not preserved for appellate review under N.C. R. App. P. 10(b)(1).

**8. Witnesses— expert testimony—capacity to form intent**

The trial court did not err in a capital sentencing proceeding by excluding the testimony of an expert witness that defendant did not act with deliberation since he was reacting to a potential fear that he was about to be harmed when he killed the victim because: (1) the purpose of such testimony was for the expert to tell the jury that certain legal standards had not been met; (2) the expert was not in any better position than the jury to make this determination; and (3) the expert's testimony would tend to confuse, rather than help, the jury in understanding the evidence and determining the facts in issue. N.C.G.S. § 8C-1, Rules 402, 403, and 702.

**9. Burglary and Unlawful Breaking or Entering— first-degree burglary—failure to submit lesser-included offense—not required**

The trial court did not err by refusing to submit misdemeanor breaking or entering as a lesser-included offense of first-degree

burglary, based on defendant's contention that the jury could infer that defendant possessed some intent at the time of the break-in other than to commit murder, because: (1) the evidence was clear that defendant entered the mobile home with the intent to commit murder; and (2) the fact that defendant may have also intended to commit the felonies of assault and kidnapping does not constitute evidence that he entered the mobile home without the intent to commit a felony therein.

### 10. Appeal and Error— preservation of issues—no offer of proof

The trial court did not err in a capital sentencing proceeding by limiting testimony from defendant's expert witness on direct examination concerning whether the expert was court-appointed because defendant did not make an offer of proof developing the witness' response to the pertinent questioning, and thus, defendant has failed to preserve this issue under N.C.G.S. § 8C-1, Rule 103(a)(2).

### 11. Evidence— expert testimony—court-appointed—cross-examination—expert fees

The trial court did not err in a capital sentencing proceeding by allowing the State to cross-examine defendant's expert witness concerning fees charged by the witness because: (1) N.C.G.S. § 8C-1, Rule 611(b) permits cross-examination of a witness on any matter relevant to any issue in the case, including credibility; and (2) even where the expert is court-appointed and paid with state funds, the State may properly cross-examine the expert about any potential bias resulting from compensation as a defense witness.

### 12. Sentencing— capital—prosecutor's closing argument—defense expert's compensation

Even though defendant did not object to the prosecutor's questions or closing argument, the trial court did not abuse its discretion in a capital sentencing proceeding by allowing the prosecutor during closing argument to mention defense expert's compensation because the passing reference was not so grossly improper as to require the trial court to intervene ex mero motu.

### 13. Conspiracy— murder—kidnapping—sufficiency of evidence

Viewing the evidence in the light most favorable to the State reveals the trial court did not err by denying defendant's motions to dismiss the charges of conspiracy to commit murder

and conspiracy to commit kidnapping because the mutual, implied understanding between defendant and his accomplice is apparent from the effortless manner in which they supported each other throughout the commission of the murder and the kidnapping.

**14. Burglary and Unlawful Breaking or Entering— first-degree burglary—sufficiency of evidence—intent to commit murder**

Viewing the evidence in the light most favorable to the State reveals the trial court did not err by denying defendant's motion to dismiss the charge of first-degree burglary because substantial evidence exists that defendant intended to commit murder at the time of the breaking and entering.

**15. Sentencing— capital—aggravating circumstances—committed during course of felony—sufficiency of evidence**

Although defendant contends the trial court erred in his capital sentencing proceeding by submitting the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed during the course of a felony based on the evidence being insufficient to support the burglary charge, the Supreme Court has already determined that the evidence supported the submission of burglary.

**16. Criminal Law— jury request to review testimony—denial by court—exercise of discretion**

The trial court did not commit prejudicial error in defendant's capital sentencing proceeding by failing to exercise its discretion under N.C.G.S. § 15A-1233, based on its denial of the jury's request to see the transcript of a witness's testimony and the instruction to the jury that its duty was to recall the evidence as it was presented, because: (1) the trial court did not impermissibly deny the request based solely on the unavailability of the transcript; and (2) defendant acquiesced in the instruction.

**17. Sentencing— capital—instructions—meaning of life imprisonment**

The trial court did not err in a capital sentencing proceeding by its instruction that the jury should determine its sentencing recommendation as though life imprisonment without parole means imprisonment for life without parole in the state's prison, because the trial court gave nearly identical instructions regarding the meaning of life imprisonment as provided under N.C.G.S. § 15-2002.

STATE v. LAWRENCE

[352 N.C. 1 (2000)]

**18. Sentencing— capital—aggravating circumstances—committed during course of felony—part of a course of violent conduct—separate evidence**

The trial court did not err in a capital sentencing proceeding by submitting to the jury as aggravating circumstances N.C.G.S. § 15A-2000(e)(5), that the murder was committed during the course of a felony (burglary), and N.C.G.S. § 15A-2000(e)(11), that the murder was part of a course of violent conduct, because each aggravating circumstance was based on separate evidence not required to prove the other, since: (1) the (e)(5) circumstance is based on evidence that defendant murdered the male victim during the commission of the burglary; and (2) the (e)(11) circumstance is based on evidence that following the murder, defendant kidnapped the female victim by brandishing a handgun and demanding that she leave with him.

**19. Sentencing— capital—peremptory instructions—nonstatutory mitigating circumstances—jurors free to reject**

The trial court did not err in a capital sentencing proceeding by its peremptory instruction to the jury concerning uncontroverted nonstatutory mitigating circumstances because jurors are allowed to reject any nonstatutory mitigating circumstance which they do not deem to have mitigating value.

**20. Sentencing— capital—death penalty—proportionate**

The trial court did not err by imposing the death penalty for first-degree murder because: (1) defendant was convicted under both the felony murder rule and premeditation and deliberation; (2) the victim was killed in his own home during the nighttime; (3) defendant repeatedly shot the victim in front of the victim's two small children; and (4) the jury found the aggravating circumstances under N.C.G.S. § 15A-2000(e)(5) and § 15A-2000(e)(11), either of which our Supreme Court has held to be sufficient to support a sentence of death.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Bowen (Wiley F.), J., on 11 December 1997 in Superior Court, Harnett County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments was allowed by the Supreme Court on 1 September 1999. Heard in the Supreme Court 17 April 2000.

*Michael F. Easley, Attorney General, by Gail E. Weis, Special Deputy Attorney General, for the State.*

*M. Gordon Widenhouse for defendant-appellant.*

PARKER, Justice.

Defendant Jimmie Wayne Lawrence was indicted on 10 February 1997 for first-degree murder in the killing of victim Dale Jerome McLean. On 3 March 1997 defendant was indicted for first-degree burglary. On 15 September 1997 defendant was indicted for conspiracy to commit murder, conspiracy to commit kidnapping, and first-degree kidnapping for the kidnapping of victim Gwen Morrison. Defendant was tried capitally and found guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. He was also found guilty of first-degree kidnapping, first-degree burglary, conspiracy to commit kidnapping, and conspiracy to commit murder. Following a capital sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. The trial court also sentenced defendant to consecutive sentences of 125 to 159 months' imprisonment for defendant's convictions of conspiracy to commit kidnapping and conspiracy to commit murder, 51 to 60 months' imprisonment for the first-degree burglary conviction, and 58 to 79 months' imprisonment for defendant's conviction of first-degree kidnapping. For the reasons discussed herein, we conclude that defendant's trial was free from prejudicial error.

The State's evidence tended to show that defendant and Gwen Morrison dated for almost two years and that their relationship ended in early December 1996. Morrison began living with Dale McLean in late December 1996. On 18 January 1997, Morrison and McLean were at home with McLean's two children, ten-year-old Chastity McLean and five-year-old Dale "Junior" McLean, when someone knocked on the back door. McLean looked out the window and said, "It's Jimmie." Morrison opened the door and stood on the top step in her nightgown and slippers.

Defendant was standing on the ground in front of the mobile home; and a man that Morrison had never seen before, William Rashad Lucas, was standing behind defendant holding a sawed-off shotgun. Defendant asked Morrison to leave with him. When Morrison refused, defendant pulled a nine millimeter handgun from the front of his pants. Morrison then told defendant that she did not

STATE v. LAWRENCE

[352 N.C. 1 (2000)]

want any trouble and that she would leave with him, but that she needed to get her shoes and coat first. Morrison turned toward the door and defendant ran up the steps, pushing Morrison through the door into the mobile home. As defendant and Morrison came through the door, Chastity and Junior were sitting in the living room and McLean was walking empty-handed down the hallway toward the door. Defendant pushed Morrison away and shot McLean, who grabbed his head and fell to the floor. Defendant stood over McLean and fired several more rounds. Defendant then grabbed Morrison by the arm and said that he would also kill her if she did not leave with him.

Defendant led Morrison outside and put her into the backseat of his vehicle. Lucas drove to defendant's house. Lucas told defendant that he should have shot Morrison, too, because she "was going to tell everything." Morrison, defendant, and Lucas then got into Lucas' car; and Lucas drove to the Comfort Inn in Sanford, North Carolina, where Lucas stayed in the car with Morrison while defendant rented a room. Once inside the room, Lucas put his shotgun on a bed and left; he returned thirty minutes later with a pair of jeans that belonged to his girlfriend. Lucas left again, and defendant took a shower after telling Morrison that he would kill her if she tried to leave.

Morrison sat on the bed while defendant showered. When defendant came out of the bathroom, he lay on the bed next to Morrison and fell asleep with his arm or leg over her body so that she could not leave the room. Defendant awoke later and asked Morrison to have sex with him. Morrison agreed out of fear that defendant would kill her if she refused him. Sometime thereafter, defendant returned a call to his mother and told her to have his father pick him up. He then told Morrison to put on the jeans that Lucas had brought earlier. Someone arrived at the Comfort Inn driving defendant's vehicle; defendant put the shotgun under the mattress and left. Morrison then called her cousin to come get her.

Meanwhile, after defendant and Lucas had driven away with Morrison, Chastity called her grandmother, who instructed Chastity to call the police. Shortly thereafter, members of the Harnett County Sheriff's Department arrived. The officers found no signs of life in McLean. A detective carried the children away from the crime scene, and Chastity calmed down enough to give a statement that defendant had shot her father.

The Lee County Sheriff's Department subsequently took defendant into custody; and with defendant's consent, several agents from the State Bureau of Investigation ("SBI") searched defendant's room at the Comfort Inn. The agents found the shotgun in the hotel room, and Lucas' girlfriend later turned over the nine-millimeter handgun to the Harnett County Sheriff's Department.

The pathologist who performed the autopsy on McLean found a total of nine gunshot wounds on McLean's body, all fired at a close range of no more than three feet. The gunshot wounds on McLean's right arm, nose, and forehead were not the fatal injuries. The cause of death was any one of the four bullets that entered McLean's brain through the right side of his skull. A forensic firearms examiner from the SBI determined that the shell casings collected at the scene from around McLean's body had been fired from defendant's nine-millimeter pistol.

Additional facts will be presented as needed to discuss specific issues.

## PRETRIAL ISSUES

[1] By two separate assignments of error, defendant contends that the short-form indictment used to charge him with first-degree murder is constitutionally inadequate. We initially address whether this issue is properly before this Court. Defendant did not contest the murder indictment at trial and, in fact, filed numerous motions stating that he was charged with first-degree murder and would be tried capitally. This Court has previously stated that "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). A defendant waives an attack on an indictment when the validity of the indictment is not challenged in the trial court. *See State v. Wallace*, 351 N.C. 481, 503, —— S.E.2d ——, —— (2000); *State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990). "However, where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court." *Wallace*, 351 N.C. at 503, —— S.E.2d at ——. Therefore, this issue is properly before this Court.

[2] Defendant contends that the short-form murder indictment violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution in two respects. First,

defendant argues that the United States Supreme Court's recent ruling in *Jones v. United States*, 526 U.S. 227, 232, 143 L. Ed. 2d 311, 319 (1999), requires a finding that the short-form indictment was unconstitutional in that it failed to allege all of the elements of the crime charged. Specifically, defendant argues that the short-form indictment failed to allege those elements that differentiate first-degree murder from second-degree murder. Second, defendant argues that *Jones* requires a finding that the short-form indictment was unconstitutional in that it failed to charge the aggravating circumstances that would increase the maximum penalty for first-degree murder from life imprisonment to the death penalty. *See id.* at 243 n.6, 143 L. Ed. 2d at 326 n.6.

The indictment against defendant for murder contained the following language:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above [Jimmie Wayne Lawrence] unlawfully, willfully and feloniously and of malice aforethought did kill and murder Dale Jerome McLean.

This indictment complied with N.C.G.S. § 15-144, which provides for a short-form version of an indictment for murder as follows:

> In indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment "with force and arms," and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law; . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be.

N.C.G.S. § 15-144 (1999). This Court has consistently held that indictments based on this statute are in compliance with both the North Carolina and United States Constitutions. *See, e.g., State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996); *State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985). Further, this Court recently reconsidered the constitutionality of the short-form

murder indictment in light of *Jones* and noted that *Jones* " 'announce[d] [no] new principle of constitutional law, but merely interpret[ed] a particular federal statute in light of a set of constitutional concerns that have emerged through a series of our decisions over the past quarter century.' " *Wallace*, 351 N.C. at 508, ——S.E.2d at ——, (quoting *Jones*, 526 U.S. at 251-52 n.11, 143 L. Ed. 2d at 331 n.11). We further emphasized our "overwhelming case law approving the use of short-form indictments and the lack of a federal mandate to change that determination" in reaffirming our previous holdings regarding the constitutionality of the short-form murder indictment. *Id.*

Similarly, *Jones* did not impose a requirement that the indictment for first-degree murder set forth aggravating circumstances. As noted in *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 140 L. Ed. 2d 350, 358 (1998), an indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crimes." "Aggravating circumstances are not separate penalties or offenses, but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment." *Poland v. Arizona*, 476 U.S. 147, 156, 90 L. Ed. 2d 123, 132 (1986) (quoting *Bullington v. Missouri*, 451 U.S. 430, 438, 68 L. Ed. 2d 270, 278 (1981)). The aggravating circumstances set forth in N.C.G.S. § 15A-2000(e) are not elements of first-degree murder but are circumstances to be considered by the jury in making its recommendation for a sentence of life imprisonment or death. No statutory or constitutional mandate requires the inclusion of aggravating circumstances in the short-form indictment. Therefore, defendant's arguments concerning the validity of his indictment for first-degree murder are without merit and are overruled.

**JURY SELECTION**

[3] In his next assignment of error, defendant contends that the trial court erroneously permitted the State to pass a panel of fewer than twelve jurors to defendant. Defendant contends that this violated the provisions of N.C.G.S. § 15A-1214 and entitles him to a new trial.

The North Carolina jury selection statute provides, in pertinent part:

(d) The prosecutor must conduct his examination of the first 12 jurors seated and make his challenges for cause and exercise his peremptory challenges. If the judge allows a challenge for

cause, or if a peremptory challenge is exercised, the clerk must immediately call a replacement into the box. When the prosecutor is satisfied with the 12 in the box, they must then be tendered to the defendant. Until the prosecutor indicates his satisfaction, he may make a challenge for cause or exercise a peremptory challenge to strike any juror, whether an original or replacement juror.

. . . .

(f) Upon the calling of replacement jurors, the prosecutor must examine the replacement jurors and indicate satisfaction with a completed panel of 12 jurors before the replacement jurors are tendered to a defendant. . . . This procedure is repeated until all parties have accepted 12 jurors.

N.C.G.S. § 15A-1214(d), (f) (1999).

In this case, the number of jurors who reported for jury duty was significantly lower than the number of jurors summoned. On the afternoon of the first day of jury selection, the trial court postponed further *voir dire* and recessed for the day when defendant expressed concern at being tendered a panel of less than twelve jurors. The trial judge noted, though, that "the fact that we're handling it this way today does not necessarily mean that we'll handle it this way tomorrow or the next day, depending—you know, it depends on how tight it gets." The following colloquy then took place:

[DEFENSE COUNSEL]:

Is it my understanding there's a possibility that, if we run out tomorrow, then they would be passed to me with what we've got?

[THE COURT]:

There's a possibility. We'll talk about that tomorrow.

The next morning, the State and defendant proceeded with *voir dire* until there were no more replacement jurors in the jury pool. The State then passed a panel of ten jurors to defendant composed of nine jurors that defendant had already accepted and one new prospective juror, Sam Altman. Defendant questioned juror Altman without objecting to the incomplete panel. Defendant expressed his satisfaction with juror Altman, and *voir dire* concluded until the next day when jury selection continued according to the statutory requirements. *See* N.C.G.S. § 15A-1214.

When a trial court acts contrary to a statutory mandate, the defendant's right to appeal is preserved despite the defendant's failure to object during trial. *See State v. Jones*, 336 N.C. 490, 497, 445 S.E.2d 23, 26 (1994). Although the jury selection procedure violated the express requirement of N.C.G.S. § 15A-1214(d) that the State pass a full panel of twelve jurors, defendant has failed to show prejudice. Defendant, without objection, questioned and accepted juror Altman. Defendant did not exhaust his peremptory challenges and did not request removal of juror Altman for cause. Thus, defendant was not forced to accept an undesirable juror; and he cannot establish any prejudice as a result of the jury selection procedure. *See* N.C.G.S. § 15A-1443(c) (1999); *State v. Miller*, 339 N.C. 663, 681, 455 S.E.2d 137, 147, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995); *State v. Fletcher*, 348 N.C. 292, 312, 500 S.E.2d 668, 680 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999).

[4] Defendant further argues that the improper jury selection procedure violated his constitutional right to a fair and impartial jury. However, defendant did not raise this constitutional issue at trial; consequently, the trial court did not have the opportunity to consider or rule on this issue. N.C. R. App. P. 10(b)(1). Therefore, defendant has failed to preserve this assignment of error for appellate review. *See State v. Fleming*, 350 N.C. 109, 122, 512 S.E.2d 720, 730 (holding that defendant failed to raise a constitutional issue at trial and thus waived appellate review of that issue), *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 274 (1999); *see also State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995); *State v. Frye*, 341 N.C. 470, 493, 461 S.E.2d 664, 675 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996).

[5] Defendant next assigns error to the trial court's overruling of defendant's objection to the State's impermissible use of a peremptory challenge to strike from the jury a black prospective juror, Milton Monk, solely on account of his race. Article I, Section 26 of the Constitution of North Carolina prohibits the use of peremptory challenges for racially discriminatory reasons, *see Fletcher*, 348 N.C. at 312, 500 S.E.2d at 680, as does the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, *see Batson v. Kentucky*, 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83 (1986).

In *Batson* the United States Supreme Court established a three-part test to determine if the prosecutor has engaged in impermissible racial discrimination in the selection of jurors. *See Hernandez v. New*

*York,* 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405 (1991) (citing *Batson,* 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89). First, the defendant must establish a *prima facie* case that the State has exercised a peremptory challenge on the basis of race. *See id.* Second, once the *prima facie* case has been established by the defendant, the burden shifts to the State to rebut the inference of discrimination by offering a race-neutral explanation for attempting to strike the juror in question. *See id.* at 358-59, 114 L. Ed. 2d at 405; *see also State v. Gaines,* 345 N.C. 647, 668, 483 S.E.2d 396, 408, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997). The explanation must be clear and reasonably specific, but " 'need not rise to the level justifying exercise of a challenge for cause.' " *State v. Porter,* 326 N.C. 489, 498, 391 S.E.2d 144, 151 (1990) (quoting *Batson,* 476 U.S. at 97, 90 L. Ed. 2d at 88). The prosecutor is not required to provide a race-neutral reason that is persuasive or even plausible. *See Fletcher,* 348 N.C. at 313, 500 S.E.2d at 680. The issue at this stage is the facial validity of the prosecutor's explanation; and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. *See State v. Barnes,* 345 N.C. 184, 209-10, 481 S.E.2d 44, 57, *cert. denied,* 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied,* 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). Our courts also permit the defendant to introduce evidence at this· point that the State's explanations are merely a pretext. *See Gaines,* 345 N.C. at 668, 483 S.E.2d at 408.

Third, and finally, the trial court must make the ultimate determination as to whether the defendant has carried his burden of proving purposeful discrimination. *See Hernandez,* 500 U.S. at 359, 114 L. Ed. 2d at 405; *Fletcher,* 348 N.C. at 313, 500 S.E.2d at 680. As this determination is essentially a question of fact, the trial court's decision as to whether the prosecutor had a discriminatory intent is to be given great deference and will be upheld unless the appellate court is convinced that the trial court's determination is clearly erroneous. *See Fletcher,* 348 N.C. at 313, 500 S.E.2d at 680; *State v. Kandies,* 342 N.C. 419, 434-35, 467 S.E.2d 67, 75, *cert. denied,* 519 U.S. 894, 136 L. Ed. 2d 167 (1996). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *State v. Thomas,* 329 N.C. 423, 433, 407 S.E.2d 141, 148 (1991) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 84 L. Ed. 2d 518, 528 (1985)).

With respect to prospective juror Monk, defendant makes two arguments that the trial court erred when it failed to find that the State's peremptory strike was the result of purposeful discrimination.

First, defendant contends that the trial court erroneously concluded its analysis upon finding that defendant failed to establish a *prima facie* showing of purposeful discrimination. Defendant argues that the trial court should have required the prosecutor to state his reasons for challenging juror Monk, the first African-American and the first venire member called into the box. However, defendant concedes this Court has previously held that the challenge of an African-American prospective juror when the defendant is also an African-American does not, standing alone, establish a *prima facie* showing of racial discrimination or a *Batson* violation. *See, e.g., State v. Hoffman,* 348 N.C. 548, 551, 500 S.E.2d 718, 720-21 (1998); *State v. Smith,* 347 N.C. 453, 462, 496 S.E.2d 357, 362, *cert. denied,* 525 U.S. 845, 142 L. Ed. 2d 91 (1998); *State v. Quick,* 341 N.C. 141, 146, 462 S.E.2d 186, 189 (1995). Therefore, we conclude that the trial court properly denied defendant's *Batson* challenge based on defendant's failure to make a *prima facie* showing of racial discrimination.

Second, defendant argues that the prosecution accepted other jurors, who were white, even though their answers to questions about capital punishment were essentially the same as prospective juror Monk's responses. Defendant contends that differentiation shows purposeful racial discrimination. The acceptance by the prosecution of white prospective jurors similarly situated to black prospective jurors who have been peremptorily stricken is a factor to be considered in determining whether there has been purposeful racial discrimination. *See Fletcher,* 348 N.C. at 317, 500 S.E.2d at 683; *Kandies,* 342 N.C. at 435, 467 S.E.2d at 75. But defendant's approach in this argument involves finding a single factor observed by defendant, not one articulated by the prosecutor, and matching that factor to the three white jurors who were passed by the prosecutor. *See State v. Robinson,* 330 N.C. 1, 19, 409 S.E.2d 288, 298 (1991). As we have said previously, "This approach 'fails to address the factors as a totality which when considered together provide an image of a juror considered . . . undesirable by the State.' " *Id.* (quoting *Porter,* 326 N.C. at 501, 391 S.E.2d at 152). Further, defendant has failed to acknowledge that, although prospective juror Monk initially indicated that he could impose the death penalty, after listening to the prosecutor question several other prospective jurors about their views, he later expressed uncertainty about his ability to impose the death penalty in light of his religious views. For these reasons we are unable to conclude that the trial court erred in not finding that prospective juror Monk was peremptorily stricken for impermissible, racially discriminatory reasons.

## GUILT-INNOCENCE PHASE

[6] In his next assignment of error, defendant contends that the absence of a complete transcript of the proceedings violated his constitutional rights to appellate review and to effective assistance of counsel on appeal. We disagree.

Under N.C.G.S. § 7A-450, an indigent defendant is entitled to receive a copy of the trial transcript at State expense when necessary to perfect an appeal. *See* N.C.G.S. § 7A-450 (1999); *see also State v. Rankin*, 306 N.C. 712, 716, 295 S.E.2d 416, 419 (1982). Further, where, as here, new counsel represents the indigent on appeal, counsel cannot effectively represent his client or assign plain error without the benefit of a complete transcript. *See Hardy v. United States*, 375 U.S. 277, 279-80, 11 L. Ed. 2d 331, 334 (1964). However, the absence of a complete transcript does not prejudice the defendant where alternatives are available that would fulfill the same functions as a transcript and provide the defendant with a meaningful appeal. *See Britt v. North Carolina*, 404 U.S. 226, 227, 30 L. Ed. 2d 400, 403-04 (1971); *State v. Eason*, 336 N.C. 730, 747-48, 445 S.E.2d 917, 928 (1994), *cert. denied*, 513 U.S. 1096, 130 L. Ed. 2d 661 (1995); *Rankin*, 306 N.C. at 716, 295 S.E.2d at 419.

In this case a mechanical malfunction resulted in the elimination of a portion of Detective Bernice Smith's testimony and all of Special Agent Tom Trochum's testimony from the record. In its amendments to the proposed record on appeal, the State set out the unrecorded testimony in narrative form as permitted under N.C. R. App. P. 9(c)(1). The trial court held a settlement conference at which Detective Smith and Agent Trochum both testified that the State's summary was an accurate reflection of their testimony at trial. The court reporter from defendant's trial also testified that, according to her handwritten notes, no objections were made during the omitted portion and that defendant did not ask Agent Trochum any questions on cross-examination. The trial court subsequently settled the record as proposed by the State.

While the trial court did not comply with the requirement of N.C.G.S. § 7A-450 to provide defendant with a complete transcript of his proceedings, we hold that defendant is not entitled to any relief as a result of this omission. The State's narrative constitutes an available alternative that is "substantially equivalent" to the complete transcript, as demonstrated by Detective Smith's and Agent Trochum's testimony that the State's narrative accurately summarizes

their testimony at trial. *Rankin*, 306 N.C. at 717, 295 S.E.2d at 419. Additionally, defendant did not object at trial or ask Agent Trochum any questions on cross-examination. The charge conference and jury instructions were fully recorded and available for review. Inasmuch as defendant admitted shooting the victim, the focus of his defense was his intent. The missing part of the transcript was not relevant to this issue. This assignment of error is overruled.

**[7]** Next, defendant contends that the trial court erred in not allowing defendant's expert witness to give his opinion as to defendant's state of mind at the time of the homicide. Defendant argues that the trial court's ruling violated defendant's constitutional rights to present evidence and to confront the witnesses against him. However, defendant did not raise the constitutional issue at trial; consequently, the trial court did not have the opportunity to consider or rule on this issue. N.C. R. App. P. 10(b)(1). Therefore, defendant has failed to preserve this constitutional issue for appellate review. *See Fleming*, 350 N.C. at 122, 512 S.E.2d at 730; *King*, 342 N.C. at 364, 464 S.E.2d at 293; *Frye*, 341 N.C. at 493, 461 S.E.2d at 675.

**[8]** Defendant also argues that the trial court improperly excluded Dr. Strahl's relevant, admissible expert witness testimony under N.C.G.S. § 8C-1, Rule 401. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1999). Any relevant evidence is generally admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. *See State v. Eason*, 328 N.C. 409, 421, 402 S.E.2d 809, 814 (1991); N.C.G.S. § 8C-1, Rules 402, 403 (1999). Expert testimony is admissible under N.C.G.S. § 8C-1, Rule 702, "if it will assist 'the trier of fact to understand the evidence or to determine a fact in issue.' " *State v. Weeks*, 322 N.C. 152, 164, 367 S.E.2d 895, 903 (1988) (quoting N.C.G.S. § 8C-1, Rule 702 (1986)). In determining the admissibility of expert opinion, the test is "whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978).

In the present case, the trial court admitted a substantial portion of the proffered testimony of defendant's expert witness related to defendant's mental condition at the time of the homicides. Dr. Nathan

Strahl, a forensic psychiatrist, testified on direct examination that defendant developed "paranoid thinking" following an incident at a party in which someone held a gun to defendant's head. Dr. Strahl further testified that defendant had a history of alcohol problems and had suffered a head injury in a motorcycle accident. Dr. Strahl also opined that defendant's ability to make or carry out plans, to reflect on potential conduct, to consider alternative conduct, and to consider the full range of consequences of his action was markedly reduced by the combination of the brain injury, alcohol problems, and paranoid thinking. In addition to this testimony, however, defendant attempted to have Dr. Strahl testify that defendant was reacting to a potential fear that he was about to be harmed when defendant killed McLean. The trial court sustained the prosecutor's objection to this last testimony and refused to admit it into evidence.

The purpose of such testimony was for the expert to tell the jury that certain legal standards had not been met, namely, that defendant did not act with deliberation and that, as a result of his paranoid thinking, alcohol problems, and brain injury, defendant was responding to a threat he genuinely perceived. We are not convinced that Dr. Strahl was in any better position than the jury to make such determinations. Having the expert testify as requested by defendant would tend to confuse, rather than help, the jury in understanding the evidence and determining the facts in issue. *See Weeks*, 322 N.C. at 167, 367 S.E.2d at 904. Therefore, we conclude that the trial court did not err in refusing to admit this testimony.

**[9]** Defendant next contends that the trial court erred in refusing to submit misdemeanor breaking or entering as a lesser-included offense of first-degree burglary. First-degree burglary is the breaking and entering of an occupied dwelling of another in the nighttime with the intent to commit a felony therein. *See* N.C.G.S. § 14-51 (1999); *see also State v. Gibbs*, 335 N.C. 1, 52, 436 S.E.2d 321, 350 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). Misdemeanor breaking or entering does not require intent to commit a felony within the dwelling. *See* N.C.G.S. § 14-54(b) (1999); *see also State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985).

An indictment for burglary need not specify the particular felony that the accused intended to commit at the time of the breaking or entering if " 'the indictment . . . charges the offense . . . in a plain, intelligible, and explicit manner and contains sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent

prosecution for the same offense,' " and if it " 'informs the defendant of the charge against him with sufficient certainty to enable him to prepare his defense.' " *State v. Worsley*, 336 N.C. 268, 281, 443 S.E.2d 68, 74 (1994) (quoting *State v. Freeman*, 314 N.C. 432, 436, 333 S.E.2d 743, 746 (1985)). The accused must intend to commit the felony at the time of entrance, and intent can be inferred from the defendant's subsequent actions. *See Peacock*, 313 N.C. at 559, 330 S.E.2d at 193.

The indictment for first-degree burglary charged that defendant "broke and entered with the intent to commit a felony therein, to wit: murder." The trial court instructed the jury that it could find defendant guilty of first-degree burglary if it found that defendant broke and entered into an occupied dwelling house during the nighttime without the tenant's consent and that at the time of the breaking and entering defendant "intended to commit murder." No lesser-included offenses were submitted to the jury despite defendant's timely request. Defendant argues that because substantial evidence was presented from which the jury could have inferred that defendant possessed some intent at the time of the break-in other than to commit murder, the trial court should have instructed the jury on the lesser-included offense of misdemeanor breaking or entering. Defendant contends that the failure to do so warrants a new trial.

A trial court must give instructions on all lesser-included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense. *See State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995); *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The trial court may refrain from submitting the lesser offense to the jury only where the "evidence is clear and positive as to each element of the offense charged" and no evidence supports a lesser-included offense. *Peacock*, 313 N.C. at 558, 330 S.E.2d at 193.

Defendant, relying on *State v. Gray*, 322 N.C. 457, 368 S.E.2d 627 (1988), contends that an instruction should have been submitted to the jury for the lesser-included offense of misdemeanor breaking or entering since the evidence revealed that, in addition to shooting McLean, defendant drew a gun and forcibly removed Morrison from the premises. Thus, defendant argues that, from the foregoing evidence, a rational jury could have found that, at the time of the breaking and entering, defendant intended to assault or kidnap Morrison rather than to murder McLean.

STATE v. LAWRENCE

[352 N.C. 1 (2000)]

The question in this case is whether there was any evidence of misdemeanor breaking or entering. In *Gray*, 322 N.C. at 458, 368 S.E.2d at 628, the defendant was tried for first-degree rape and felonious breaking or entering. This Court held that misdemeanor breaking or entering should have been submitted to the jury since "[t]he jury was not compelled to find from the evidence that the defendant intended to commit rape at the time he entered the building." *Id.* at 461, 368 S.E.2d at 630.

In contrast, this Court held that the trial court properly refused to submit the lesser-included offense of breaking or entering in *Montgomery*, 341 N.C. at 569, 461 S.E.2d at 740. The indictment for burglary in that case charged that the defendant intended to commit the felonies of larceny and rape when he broke into the victim's apartment. *Id.* at 567, 461 S.E.2d at 739. However, the trial court instructed the jury that, to convict the defendant of first-degree burglary, it must find that the defendant intended to commit larceny, not rape, at the time of the breaking and entering. *Id.* This Court held that "the evidence was clear and positive that defendant entered the apartment with the intent to commit larceny, and the fact that he also may have intended to commit the felonies of rape and murder does not constitute evidence that he entered the apartment without the intent to commit a felony therein." *Id.* at 568, 461 S.E.2d at 740.

In the present case, the State's evidence that defendant killed McLean after he entered the mobile home was substantial evidence that he had the intent to commit murder when he entered the mobile home. *See id.* The State's evidence at trial showed that defendant went to McLean's house and insisted that Morrison leave with him. Lucas stood behind defendant holding a sawed-off shotgun. When Morrison refused to leave with defendant, he pulled out a gun. As Morrison turned to go back into the house to get shoes and a jacket, defendant ran up the steps, pushed her through the door, and immediately began shooting at McLean. Defendant continued to shoot McLean after he had fallen to the floor, firing a total of nine rounds. Defendant then forced Morrison to leave with him, telling her that he would kill her, too, if she refused to go with him. Thus, the evidence was clear and positive that defendant entered the mobile home with the intent to commit murder; the fact that defendant also may have intended to commit the felonies of assault and kidnapping does not constitute evidence that he entered the mobile home without the intent to commit a felony therein. This assignment of error is overruled.

**[10]** In his next assignment of error, defendant contends that the trial court erred by excluding evidence from defendant's expert witness and by allowing the State to cross-examine defendant's expert witness concerning fees charged by the witness. Defendant further contends that the trial court permitted the prosecutor to distort the expert's testimony by characterizing the witness as biased in favor of defendant. The trial court limited defense expert Dr. Strahl's testimony on direct examination as follows:

Q. Have you had occasion to testify in court before, Dr. Strahl?

A. Yes, I have.

Q. Have you testified for the State of North Carolina in cases?

A. Yes, I have.

Q. You were appointed in this case by this Court to assist in preparation of the case?

[PROSECUTOR]:

Objection.

[THE COURT]:

Sustained.

Q. Did you have occasion, Dr. Strahl, in your involvement in this case, to know or see Jimmy [sic] Wayne Lawrence?

A. Yes, I did.

Defendant did not make an offer of proof developing the witness' response to the questioning. Accordingly, defendant has failed to preserve this issue for appellate review according to the standard set forth in N.C.G.S. § 8C-1, Rule 103(a)(2). *See State v. Atkins,* 349 N.C. 62, 79, 505 S.E.2d 97, 108 (1998), *cert. denied,* 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). We do not agree with defendant's contention that the relevance and content of the excluded testimony was necessarily apparent from the context within which questions were asked and that, therefore, no offer of proof was necessary to preserve this issue for appeal. *See id.; State v. Geddie,* 345 N.C. 73, 96, 478 S.E.2d 146, 157 (1996), *cert. denied,* 522 U.S. 825, 139 L. Ed. 2d 43 (1997). Although the initial thrust of the questioning related to Dr. Strahl's experience and his knowledge of this specific defendant, nothing in the record on appeal indicates whether Dr. Strahl was court-appointed or privately retained. Therefore, for this Court to attempt

to presume the content of Dr. Strahl's excluded testimony or its relevance would be speculation.

[11] With respect to the fees charged by the expert witness, defendant argues that the following exchange during the State's cross-examination of Dr. Strahl was misleading since Dr. Strahl was court appointed:

Q. I take it you were retained by the Defense to evaluate the defendant and, of course, to come to court and testify in this case; is that right?

A. That is correct.

Q. I assume you are being paid or you're hoping to be paid for your work in this case; are you not?

A. Yes, sir, I am.

Q. What hourly rate is it that you're charging or you hope to be paid?

A. $150 an hour, which is the standard, average rate in North Carolina, and, in fact, in the nation, as well.

Q. How many hours do you have in this case up to this moment?

A. At least 20, perhaps more.

The State appropriately attempted to illustrate a potential source of bias. The subject of compensation of a defendant's expert witness is an appropriate matter for cross-examination. Rule 611(b) of the North Carolina Rules of Evidence permits cross-examination of a witness "on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) (1999). This Court has additionally stated that the scope of cross-examination is subject to the control of the trial court and that "questions must be asked in good faith." *State v. Williams*, 279 N.C. 663, 675, 185 S.E.2d 174, 181 (1971). Further, "this Court has consistently held that 'an expert witness' compensation is a permissible cross-examination subject to test partiality towards the party by whom the expert was called.' " *State v. Brown*, 335 N.C. 477, 493, 439 S.E.2d 589, 598-99 (1994) (quoting *State v. Allen*, 322 N.C. 176, 195, 367 S.E.2d 626, 636 (1988)); *see also State v. Wilson*, 335 N.C. 220, 226, 436 S.E.2d 831, 835 (1993). Even where the expert witness was court-appointed and paid with state funds, as defendant alleges is the situation in this case, the State may properly cross-examine the expert about any potential bias resulting from

compensation as a defense witness. *See Brown*, 335 N.C. at 493, 439 S.E.2d at 599. Therefore, we conclude that the prosecutor's cross-examination of defense expert Dr. Strahl was proper.

[12] With respect to mention of the expert's compensation during the prosecutor's closing argument, we further conclude that the argument did not violate the scope of permissible prosecutorial conduct. During closing argument, the prosecutor argued as follows:

> But again, the psychiatrist simply relied upon the word of the defendant. He bases his opinion upon four hours of talking to him while he's collecting $150 an hour for doing so. The psychiatrist never talked to the investigating officers in this case. None. Never talked to Gwen Morrison. But he talked to the defendant.

Preliminarily, we note that defendant in this case did not object to the prosecutor's questions or closing argument; and where a defendant fails to object, an appellate court reviews the prosecutor's arguments to determine whether the argument was "so grossly improper that the trial court committed reversible error in failing to intervene *ex mero motu* to correct the error." *State v. Williams*, 317 N.C. 474, 482, 346 S.E.2d 405, 410 (1986). As we have stated previously, "only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996).

When viewed in context of the conflicting evidence concerning defendant's intent and state of mind at the time of the murder, we conclude that it was not a "gross impropriety" to argue Dr. Strahl's potential bias related to his compensation. We have consistently held that " 'counsel must be allowed wide latitude in the argument of hotly contested cases. He may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case.' " *Allen*, 322 N.C. at 195, 367 S.E.2d at 636 (quoting *State v. Covington*, 290 N.C. 313, 327-28, 226 S.E.2d 629, 640 (1976)); *see also Atkins*, 349 N.C. at 83, 505 S.E.2d at 110. In *State v. Harris*, 338 N.C. 129, 147-48, 449 S.E.2d 371, 379 (1994), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995), this Court found no error in the prosecutor's closing argument that the defendant's mother shaded her testimony in favor of her son. Similarly, in *State v. Murillo*, 349 N.C. 573, 604, 509 S.E.2d 752, 770

(1998), *cert. denied,* —— U.S. ——, 145 L. Ed. 2d 87 (1999), we found no error in the prosecutor's argument regarding the defendant's forensic expert "that when you need someone to say something, you can find them. You can pay them enough and they'll say it."

In light of our previous holdings, we cannot conclude that the prosecutor's passing reference to Dr. Strahl's fee was so grossly improper as to require the trial court to intervene *ex mero motu* when, at trial, defense counsel apparently did not believe the argument was prejudicial. *See id.* at 606, 509 S.E.2d at 771; *State v. Campbell,* 340 N.C. 612, 630, 460 S.E.2d 144, 153 (1995), *cert. denied,* 516 U.S. 1128, 133 L. Ed. 2d 871 (1996). This assignment of error is overruled.

**[13]** Defendant next contends that the trial court erred by denying his motions to dismiss the charges of conspiracy to commit murder, conspiracy to commit kidnapping, and first-degree burglary. Defendant argues that there was insufficient evidence of these charges to go to the jury; thus, defendant submits that the trial court erred by denying his motion to dismiss these three charges.

In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *See State v. Lee,* 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). The State must present substantial evidence of each element of the offense charged. *See id.* "[T]he trial court should consider all evidence actually admitted, whether competent or not, that is favorable to the State." *State v. Jones,* 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied," *State v. Locklear,* 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988); however, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed," *State v. Malloy,* 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).

First, the offenses of conspiracy to commit murder and conspiracy to commit kidnapping require, *inter alia,* an agreement between defendant and Lucas to kidnap Morrison and to murder McLean. *See State v. Bindyke,* 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975). The parties do not necessarily have to reach an express agreement. " 'A

mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.'" *State v. Smith*, 237 N.C. 1, 16, 74 S.E.2d 291, 301 (1953) (quoting *State v. Conner*, 179 N.C. 752, 755, 103 S.E. 79, 80 (1920)). The existence of a conspiracy may be shown with direct or circumstantial evidence. *See Bindyke*, 288 N.C. at 616, 220 S.E.2d at 526. The proof of a conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933).

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we conclude that substantial evidence exists to support a finding that defendant and Lucas conspired to kidnap Morrison and to murder McLean. The State's evidence at trial tended to show that defendant and Lucas drove together to McLean's home. Both defendant and Lucas were carrying weapons. When defendant knocked on the door and demanded that Morrison leave with him, Lucas stood behind defendant holding a sawed-off shotgun. When defendant pushed Morrison into the house and starting shooting McLean, Lucas climbed the stairs and stood in the doorway holding the shotgun. Lucas drove defendant and Morrison to defendant's house where Lucas stood guard over Morrison while defendant went inside the house. Lucas then drove defendant and Morrison to the hotel where Lucas stayed in the car with Morrison while defendant rented a room. Later, Lucas left his shotgun in the room while he went to his girlfriend's house to get clothing for Morrison and to hide defendant's handgun. The mutual, implied understanding between defendant and Lucas is apparent from the effortless manner in which they supported each other throughout the commission of the murder and the kidnapping. Based on this evidence, we conclude that the trial court did not err in denying defendant's motion to dismiss the charges for conspiracy to commit murder and conspiracy to commit kidnapping.

**[14]** Second, the offense of first-degree burglary requires, *inter alia*, that defendant intended to commit a felony—in this case, murder— at the time of the breaking and entering. *See State v. Barlowe*, 337 N.C. 371, 377, 446 S.E.2d 352, 356 (1994). "The criminal intent of the defendant at the time of breaking or entering may be inferred from the acts he committed subsequent to his breaking or entering the building." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992).

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we conclude that substantial evidence exists that defendant intended to commit murder at the time of the breaking and entering. The State's evidence at trial tended to show that defendant had recently ended a long-term relationship with Morrison. Defendant went to McLean's home at night, uninvited, and accompanied by a friend. Both defendant and his friend were carrying weapons. Defendant's friend stood behind him while defendant talked with Morrison. When Morrison turned to go back inside the mobile home, defendant pushed her through the door and immediately attempted to shoot McLean. Defendant's gun initially jammed, and Morrison pulled on defendant's arm to stop him from shooting McLean; but defendant pushed Morrison away and shot McLean. Defendant stood over McLean's fallen body and continued to shoot him numerous times in front of his young children. Based on this evidence, we conclude that the trial court did not err in denying defendant's motion to dismiss the charge of first-degree burglary.

## SENTENCING HEARING

[15] Defendant next assigns error to the trial court's submission of the (e)(5) aggravating circumstance that the murder was committed during the course of a burglary. N.C.G.S. § 15A-2000(e)(5) (1999). The trial court submitted and the jury found this aggravating circumstance. In support of his argument, defendant argues that the evidence was insufficient to support the burglary charge; thus, it was error to submit burglary as an aggravating circumstance. Having previously determined that the evidence supported the submission of burglary, we find defendant's argument to be without merit.

[16] Next, defendant argues that the trial court committed prejudicial error by failing to exercise its discretion under N.C.G.S. § 15A-1233, thereby entitling defendant to a new trial. In this case the jury sent a note to the trial judge requesting the transcript of prosecution witness Gwen Morrison's testimony. The trial court instructed the jury that its duty was to recall the evidence as it was presented and thereby denied the request.

N.C.G.S. § 15A-1233 provides, in pertinent part:

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice

to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

N.C.G.S. § 15A-1233(a) (1999). As this Court has previously explained, "[t]he statute's requirement that the trial court exercise its discretion is a codification of the long-standing common law rule that the decision whether to grant or refuse a request by the jury for a restatement of the evidence lies within the discretion of the trial court." *State v. Barrow*, 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999).

"When a motion addressed to the discretion of the trial court is denied upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable." *State v. Johnson*, 346 N.C. 119, 124, 484 S.E.2d 372, 375-76 (1997); *see also Barrow*, 350 N.C. at 646, 517 S.E.2d at 378. " 'In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter.' " *Johnson*, 346 N.C. at 124, 484 S.E.2d at 376 (quoting *State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980)); *see also Barrow*, 350 N.C. at 646, 517 S.E.2d at 378.

Here, the trial court instructed the jury, without objection from the parties, as follows:

As to the second question, members of the jury, it is your duty to recall the evidence as the evidence was presented. So you may retire and resume your deliberation.

From these instructions, we are convinced that the trial judge did not impermissibly deny the request based solely on the unavailability of the transcript. *See Barrow*, 350 N.C. at 648, 517 S.E.2d at 378-79 (holding that the trial court failed to exercise its discretion by stating that it did not have the ability to present the transcript to the jury); *State v. Ashe*, 314 N.C. 28, 35, 331 S.E.2d 652, 656-57 (1985) (holding that the trial court failed to exercise its discretion in merely stating that the request could not be granted because there was "no transcript at this point"). Instead, the trial judge plainly exercised his dis-

cretion in denying the jury's request. Defendant does not contend that the trial court abused its discretion. Moreover, defendant acquiesced in the instruction and cannot now complain that he was prejudiced by the trial court's action. This assignment of error is without merit.

**[17]** Defendant next contends that the trial court erred in not instructing the jury that a sentence of life imprisonment means a sentence of life imprisonment without parole. In response to the jury's question about the meaning of "life imprisonment," the trial court gave the following instruction:

> In considering whether to recommend death or life imprisonment without parole, you should determine the question as though life imprisonment without parole means exactly what the statute says "imprisonment for life without parole in the state's prison."

Defendant argues that the trial court's use of the phrase "as though" was misleading and violated defendant's statutory and constitutional rights.

First, defendant asserts that the trial court's erroneous instruction resulted in an arbitrary death sentence in violation of the Eighth Amendment to the United States Constitution. However, defendant did not raise this constitutional issue at trial; consequently, the trial court did not have the opportunity to consider or rule on this issue. N.C. R. App. P. 10(b)(1). Therefore, defendant has failed to preserve this assignment of error for appellate review. *See Fleming*, 350 N.C. at 122, 512 S.E.2d at 730; *King*, 342 N.C. at 364, 464 S.E.2d at 293; *Frye*, 341 N.C. at 493, 461 S.E.2d at 675.

Second, defendant argues that the trial court's instruction violated N.C.G.S. § 15A-2002, which provides, in pertinent part:

> The judge shall instruct the jury, in words substantially equivalent to those of this section, that a sentence of life imprisonment means a sentence of life without parole.

N.C.G.S. § 15A-2002 (1999).

In *State v. Thomas*, 344 N.C. 639, 653, 477 S.E.2d 450, 457 (1996), *cert. denied*, 522 U.S. 824, 139 L. Ed. 2d 41 (1997), we rejected the argument that the trial court's instruction regarding life imprisonment, that the jury "should determine the question as though life imprisonment means exactly what the statute says: imprisonment

STATE v. LAWRENCE

[352 N.C. 1 (2000)]

for life in the State's prison," violated the requirement of N.C.G.S. § 15A-2002. In this case, the trial court gave nearly identical instructions regarding the meaning of life imprisonment. Thus, having found no compelling reason to depart from our prior holdings, we reject this assignment of error.

[18] In his next assignment of error, defendant contends the trial court erred by submitting to the jury as aggravating circumstances both that the murder was committed during the course of a felony (burglary), N.C.G.S. § 15A-2000(e)(5), and that the murder was part of a course of conduct which involved commission of other crimes of violence against other persons, N.C.G.S. § 15A-2000(e)(11). The trial court then instructed the jury "that the same evidence can not be used as a basis of finding more than one aggravating fact." Defendant argues that submission of both aggravating circumstances constituted impermissible and unconstitutional duplication in the evidence of aggravation. According to defendant, the evidence potentially overlapped such that the jury might have used the evidence supporting the former circumstance to find the existence of the latter circumstance. We do not find defendant's argument persuasive.

In a capital case the trial court may not submit multiple aggravating circumstances supported by the same evidence. *See State v. Goodman*, 298 N.C. 1, 29, 257 S.E.2d 569, 587 (1979) (finding error where same evidence supported two circumstances submitted, that the murder was committed to (i) avoid or prevent arrest, N.C.G.S. § 15A-2000(e)(4); and (ii) to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws, N.C.G.S. § 15A-2000(e)(7)). "Aggravating circumstances are not considered redundant absent a complete overlap in the evidence supporting them." *State v. Moseley*, 338 N.C. 1, 54, 449 S.E.2d 412, 444 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). Further, this Court has approved submitting the course of conduct aggravating circumstance where more than one victim is killed or injured. *See State v. Cummings*, 332 N.C. 487, 512, 422 S.E.2d 692, 706 (1992) (defendant killed woman and twenty-six months later killed her sister); *State v. Jones*, 327 N.C. 439, 452, 396 S.E.2d 309, 317 (1990) (defendant fired shots endangering store customers, killed one, seriously wounded another, and committed armed robbery against store clerk). In addition, when a jury finds a defendant guilty on theories of both premeditation and deliberation and felony murder, and both theories are supported by the evidence, the felony underlying the felony murder may properly be submitted as an aggravating circum-

stance. *See Gibbs,* 335 N.C. at 59, 436 S.E.2d at 354; *State v. Jennings,* 333 N.C. 579, 626, 430 S.E.2d 188, 213, *cert. denied,* 510 U.S. 1028, 126 L. Ed. 2d 602 (1993).

In *Gibbs,* 335 N.C. at 58, 436 S.E.2d at 354, a burglary-murder case, the trial court submitted as aggravating circumstances that the murder was committed during the course of a felony, N.C.G.S. § 15A-2000(e)(5), and as part of a course of violent conduct, N.C.G.S. § 15A-2000(e)(11). This Court held the two circumstances were not supported by the same evidence. *Gibbs* 335 N.C. at 61, 436 S.E.2d at 355. The (e)(5) circumstance was supported by evidence that defendant murdered the victim while engaged in the commission of a burglary. *Id.* at 60, 436 S.E.2d at 355. However, the (e)(11) circumstance neither required nor relied upon proof of burglary; instead, the course of conduct circumstance was supported by evidence that defendant murdered the victim, then killed two other people. *Id.* at 60-61, 436 S.E.2d at 355. Thus, the Court concluded that "Defendant need not have engaged in a violent course of conduct in order to have committed *a* capital felony in the course of the burglary." *Id.* at 61, 436 S.E.2d at 355.

Similarly, in this case, each aggravating circumstance was based on evidence not required to prove the other. The (e)(5) circumstance is based on evidence that defendant murdered McLean during the commission of the burglary. The (e)(11) circumstance is based on entirely separate evidence that, following the murder of McLean, defendant kidnapped Morrison by brandishing a handgun and demanding that she leave with him. Concluding that the trial court properly instructed the jury not to consider the same evidence as the basis of more than one aggravating circumstance, that different evidence supported each aggravating circumstance, and that the two circumstances were not inherently duplicative on the peculiar facts of this case, we hold the trial court did not err in submitting both.

[19] Next, defendant contends that the trial court erred in instructing the jury that it could refuse to find uncontroverted nonstatutory mitigating circumstances if the jury deemed the evidence to have no mitigating value. Defendant argues that a jury in a capital case may not refuse to consider any relevant mitigating evidence and that, by instructing the jury to consider if a submitted nonstatutory mitigating circumstance has mitigating value, the trial court allowed the jury to disregard relevant mitigating evidence. Defendant argues that all eleven nonstatutory mitigating circumstances submitted to the jury were inherently mitigating and that the jury should not have been

allowed to reject any of the mitigating circumstances. Defendant argues the jury should have been required to consider and give effect to all the circumstances supported by uncontroverted evidence when recommending sentence because the jury "may not refuse to consider[] any relevant mitigating evidence offered by the defendant as the basis for a sentence less than death." *Penry v. Lynaugh*, 492 U.S. 302, 318, 106 L. Ed. 2d 256, 277 (1989). Defendant argues that once a peremptory instruction is given as to a mitigating circumstance, the only question that remains is how much weight the jury will give the circumstance. Defendant argues that, contrary to the jury instructions given in this case, the jury cannot decide a nonstatutory mitigating circumstance has no weight after being given a peremptory instruction which states that all of the evidence tends to show the existence of the mitigating circumstance.

The trial court instructed the jury that all the evidence tended to show each particular mitigating circumstance but that the jury must determine if the circumstance existed and had value. We conclude that the trial court's peremptory instructions for nonstatutory mitigating circumstances were correct. *See State v. Lynch*, 340 N.C. 435, 475, 459 S.E.2d 679, 699 (1995) (holding that identical jury instructions regarding nonstatutory mitigating circumstances were not erroneous), *cert. denied*, 517 U.S. 1143, 134 L. Ed. 2d 558 (1996). In *State v. Green*, 336 N.C. 142, 172, 443 S.E.2d 14, 32, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994), the defendant argued that the trial court erred in not instructing the jury to consider and give weight to an uncontroverted nonstatutory mitigating circumstance. This Court held that a juror may find that a nonstatutory mitigating circumstance exists but may give that circumstance no mitigating value. *Id.* at 173, 443 S.E.2d at 32. The Court noted that in *State v. Gay*, 334 N.C. 467, 493, 434 S.E.2d 840, 855 (1993), the Court held that peremptory instructions could be given for nonstatutory mitigating circumstances. *Green*, 336 N.C. at 173, 443 S.E.2d at 32. This Court in *Green* went on to note that "nothing we stated in *Gay* supports the notion that the peremptory instructions to be used with regard to nonstatutory mitigating circumstances should be identical to those used with regard to statutory mitigating circumstances." *Id.* The Court held that "even if a jury finds from uncontroverted and manifestly credible evidence that a nonstatutory mitigating circumstance exists, 'jurors may reject the nonstatutory mitigating circumstance if they do not deem it to have mitigating value.'" *Id.* at 173-74, 443 S.E.2d at 32-33 (quoting *Gay*, 334 N.C. at 492, 434 S.E.2d at 854).

STATE v. LAWRENCE

[352 N.C. 1 (2000)]

Defendant, in essence, argues that the jury should have been instructed to consider and give weight to uncontroverted nonstatutory mitigating circumstances. We conclude that the trial court's peremptory instructions for nonstatutory mitigating circumstances were correct. For each nonstatutory mitigating circumstance, the trial court first set out a mitigator and then instructed as follows:

> [B]ecause the evidence is unrebutted as to [named mitigating circumstance], I instruct you to find the existence of that mitigating circumstance if one or more of you find the facts to be as all the evidence tends to show. If one or more of you deems this mitigating circumstance to have mitigating value, you would so indicate by having your foreperson write yes in the space provided. If none of you finds the facts to be as all the evidence tends to show or if none of you deem it to have mitigating value, you would have your foreperson write no in the space provided.

"[J]urors are allowed to reject any nonstatutory mitigating circumstance which they do not deem to have mitigating value." *State v. Basden*, 339 N.C. 288, 304, 451 S.E.2d 238, 247 (1994), *cert. denied*, 515 U.S. 1152, 132 L. Ed. 2d 845 (1995); *see also State v. Spruill*, 338 N.C. 612, 661, 452 S.E.2d 279, 306 (1994), *cert. denied*, 516 U.S. 834, 133 L. Ed. 2d 63 (1995). Defendant's argument is contrary to our prior decisions on this issue, and defendant has demonstrated no reason why we should reverse or alter our precedent. *See, e.g., Lynch*, 340 N.C. at 476, 459 S.E.2d at 700. This assignment of error is without merit and is, therefore, overruled.

## PRESERVATION ISSUES

Defendant raises nine additional issues that he concedes have been decided contrary to his position previously by this Court: (i) the trial court erred by denying defendant's motion to question prospective jurors about their understanding of the meaning of a life sentence for first-degree murder and of parole eligibility for a life sentence of first-degree murder; (ii) the trial court erred by instructing jurors that they must be unanimous to answer "no" for Issues One, Three, and Four, and to reject the death penalty in their punishment recommendation; (iii) the trial court erred by allowing the State to introduce victim-impact evidence; (iv) the trial court's capital sentencing jury instructions defining defendant's burden to prove mitigating circumstances to the satisfaction of each juror did not adequately guide the jury's discretion about the requisite degree of proof; (v) the trial court erred by allowing the jury to refuse to give effect to mitigating evi-

dence if the jury deemed the evidence not to have mitigating value; (vi) the trial court erred in allowing death qualification of the jury by excusing for cause certain jurors who expressed an unwillingness to impose the death penalty; (vii) the trial court erred in instructing the jurors in accordance with the pattern jury instructions that they "may" consider the mitigating circumstances found when balancing the mitigating and aggravating circumstances in Issue Three and in determining the substantiality of the aggravating circumstances in Issue Four; (viii) the trial court erred by instructing each juror to consider only the mitigation found by that juror at Issue Two in deciding Issues Three and Four; and (ix) the trial court erred by sentencing defendant to death because the death penalty statute is unconstitutionally vague and overbroad and is imposed in an arbitrary and discriminatory manner.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings and also for the purpose of preserving the issues for any possible further judicial review. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[20] Finally, defendant argues that the sentence of death in this case was imposed under the influence of passion, prejudice, or other arbitrary considerations and that, based on the totality of the circumstances, the death penalty is disproportionate. We are required by N.C.G.S. § 15A-2000(d)(2) to review the record and determine (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *See State v. McCollum*, 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's findings of the two aggravating circumstances submitted were supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *See State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Our consideration is limited to those cases which are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *See State v. Syriani*, 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green*, 336 N.C. at 198, 443 S.E.2d at 47.

Defendant was convicted of first-degree murder based upon premeditation and deliberation, and under the felony murder rule. Defendant was also convicted of conspiracy to commit murder, conspiracy to commit kidnapping, first-degree burglary and first-degree kidnapping. The jury found both aggravating circumstances submitted: (i) that the murder was committed while defendant was engaged in the commission of a burglary, N.C.G.S. § 15A-2000(e)(5); and (ii) that the murder was part of a course of conduct in which defendant committed other crimes of violence against another person, N.C.G.S. § 15A-2000(e)(11).

Five statutory mitigating circumstances were submitted for the jury's consideration: (i) defendant has no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (ii) the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (iii) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); (iv) defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7); and (v) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury found all of the statutory mitigating cir-

cumstances to exist except N.C.G.S. § 15A-2000(f)(7). The trial court submitted eleven nonstatutory mitigating circumstances; and the jury found one of these to exist and to have mitigating value: "the defendant is the father of two daughters and has a loving and supportive relationship with his children."

We begin our analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

This case has several features which distinguish it from the cases in which we have found the sentence to be disproportionate. First, the jury convicted defendant on the basis of both the felony murder rule and premeditation and deliberation. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Second, the victim was killed in his own home during the nighttime. A murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Finally, defendant repeatedly shot McLean in front of McLean's two small children. *See State v. McNeill*, 346 N.C. 233, 243, 485 S.E.2d 284, 290 (1997) (noting that the defendant killed the victim in front of her children in affirming the death sentence), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998); *State v. Fullwood*, 323 N.C. 371, 404, 373 S.E.2d 518, 538 (1988) (relying on the fact that the defendant killed the victim in front of several small children as one basis for finding the death sentence proportionate), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). Therefore, we conclude that the present

case is distinguishable from those cases in which we have found the death penalty disproportionate.

We also consider cases in which this Court has found the death penalty to be proportionate. We note that defendant's sentence is not disproportionate simply because the jury found four mitigating circumstances and only two aggravating circumstances. *See Lynch*, 340 N.C. at 483-84, 459 S.E.2d at 704-05. Even a "single aggravating circumstance may outweigh a number of mitigating circumstances and . . . be sufficient to support a death sentence." *State v. Bacon*, 337 N.C. 66, 110, 446 S.E.2d 542, 566 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Additionally, we emphasize that while two of the statutory mitigating circumstances found in this case, that defendant was under the influence of mental or emotional disturbance when he committed the murder, N.C.G.S. § 15A-2000(f)(2), and that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6), are often persuasive to the jury in recommending life imprisonment, they are not conclusive. *See State v. McDougall*, 308 N.C. 1, 36 nn.9-10, 301 S.E.2d 308, 329 nn.9-10, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *see also State v. Lee*, 335 N.C. 244, 298, 439 S.E.2d 547, 576 (affirming the death sentence where the jury found the existence of the (f)(2) and (f)(6) mitigating circumstances), *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994); *State v. Rook*, 304 N.C. 201, 236, 283 S.E.2d 732, 754 (1981) (affirming the death sentence after assuming that the jury found the (f)(2) and (f)(6) mitigating circumstances), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). The jury could have reasonably given these two statutory mitigating circumstances less weight in making the ultimate decision of life imprisonment or death.

Further, this Court has deemed four statutory aggravating circumstances, standing alone, to be sufficient to sustain death sentences; the (e)(5) and (e)(11) circumstances are among them. *See Bacon*, 337 N.C. at 110 n.8, 446 S.E.2d at 566 n.8. As we said earlier, the evidence introduced at trial was sufficient for the jury to find that defendant committed the murder during the commission of first-degree burglary and as part of a course of violent conduct. Thus, we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

We conclude that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error, and that the death sentence in this case is not disproportionate. Accordingly, the judgments of the trial court are left undisturbed.

NO ERROR.