DAVIS, Judge.
 

 *64
 
 Derrick Woodard ("Respondent") appeals from the trial court's order involuntarily committing him to UNC Wakebrook Inpatient Treatment Facility ("UNC Wakebrook") for a period of inpatient treatment. On appeal, Respondent argues that the lack of a verbatim transcript from his commitment hearing has deprived him of the opportunity for meaningful appellate review of the commitment order and entitles him to a new hearing. After careful review, we affirm the trial court's order.
 

 Factual Background
 

 On 2 February 2015, Dr. Edith Gettes filed an affidavit and petition for involuntary commitment in which she alleged Respondent was mentally ill and dangerous to himself and others. A magistrate ordered Respondent to be held for examination that same day. A hearing was held on 12 February 2015 before the Honorable Louis Meyer in Wake County District Court. Following the hearing, the trial court concluded that Respondent was mentally ill and presented a danger to himself and
 
 *65
 
 others. That same day, the trial court entered an order containing the following findings:
 

 Respondent ('R.') had prior 10-day inpatient admission at UNC Wakebrook in Nov. 2013 after presenting with symptoms of paranoia and delusions. During this admission, R. punched a wall and had his hand X-rayed; however, R. improved with treatment and medication. R. agreed to voluntary 90-day outpatient treatment and medication thereafter, but refused to take medication after initial supply ran out and refused to do follow up outpatient treatment.
 

 During 1st 2 months of 2015, R. made false Facebook postings asserting gang membership that caused 2 males to come to R's home seeking retribution, and R. had physical altercations with his step-sisters and father, and R. was admitted for inpatient treatment at UNC Wakebrook upon petition and magistrate's custody order for involuntary commitment.
 

 During present admission to UNC Wakebrook, R. has been treated by Dr. Br[i]an Robbins, who gave expert psychiatric testimony at 2-12-15 district court hearing that R. is diagnosed as being schizophrenic based on R. having multiple delusions and paranoia (e.g., R. asserted he's a Navy Seal, is being followed by Black Panthers and Secret Service, is Pres. Obama's nephew, has a microchip planted in his head, is a 6-time Olympic gold medalist) and R. having disorganized thinking and disconnect as to why treatment and medication are necessary and helpful for him.
 

 During present admission at UNC Wakebrook, R. threatened physical harm to Dr. Robbins and a nurse for requiring R. to take medication; however, R. has improved with treatment and medication during present inpatient admission. R. is unable, without care, supervision and assistance of others to exercise self-control, judgment and discretion to satisfy his need for medical/psychiatric care, and has exhibited severely impaired insight as to his need for medical/psychiatric care, and there is reas[onable] probab[ility] of R. suffering serious physical debilitation in near future unless he gets adequate inpatient and outpatient treatments. Within relevant past, R. has threatened to inflict serious bodily harm on other persons (including
 
 *66
 
 threatening serious bodily harm to UNC law enforcement officers on 2/3/15) and there is reasonable probability this conduct would be repeated unless R. gets adequate inpatient and outpatient treatment.
 

 The trial court ordered that Respondent be committed to UNC Wakebrook for a period of inpatient treatment not to exceed 30 days and to Alliance Behavioral Health for a period of outpatient treatment not to exceed 60 days. Respondent entered written notice of appeal on 9 March 2015.
 

 Following the entry of notice of appeal, Respondent's appointed appellate counsel, who did not represent him at the commitment
 
 *112
 
 hearing, was informed by the court reporting manager for the Administrative Office of the Courts that no transcript of the hearing could be prepared because the recording equipment in the courtroom had failed to record the hearing and there had not been a court reporter present in the courtroom.
 

 Analysis
 

 The sole issue presented in this appeal is whether Respondent is entitled to a new involuntary commitment hearing because the lack of a verbatim transcript from the underlying hearing denied him his right to meaningful appellate review.
 
 [1]
 
 An order of involuntary commitment is immediately appealable. N.C. Gen. Stat. § 122C-272 (2015). Pursuant to N.C. Gen. Stat. § 122C-268, the respondent is entitled on appeal to obtain a transcript of the involuntary commitment proceeding, which must be provided at the State's expense if the respondent is indigent. N.C. Gen. Stat. § 122C-268(j) (2015).
 

 This Court has very recently dealt with this same issue.
 
 See
 

 In re Shackleford
 
 , --- N.C.App. ----,
 
 789 S.E.2d 15
 
 (2016) ). As we explained in
 
 Shackleford
 
 , "the unavailability of a verbatim transcript may in certain cases deprive a party of its right to meaningful appellate review and ... in such cases, the absence of the transcript would itself constitute a basis for appeal."
 
 See
 

 id.
 

 at ----,
 
 789 S.E.2d at 18
 
 . The unavailability of a verbatim transcript does not, however, automatically constitute reversible error.
 

 *67
 

 Id.
 

 at ----,
 
 789 S.E.2d at 18
 
 . Rather, in order to show that the absence of a verbatim transcript entitles an appellant to a new hearing, he "must demonstrate that the missing recorded evidence resulted in prejudice."
 

 Id.
 

 at ----,
 
 789 S.E.2d at 18
 
 (citation and quotation marks omitted). Moreover, "[g]eneral allegations of prejudice are insufficient to show reversible error."
 

 Id.
 

 at ----,
 
 789 S.E.2d at 18
 
 . "[T]he absence of a complete transcript does not prejudice the [appellant] where alternatives are available that would fulfill the same functions as a transcript and provide the [appellant] with a meaningful appeal."
 
 State v. Lawrence
 
 ,
 
 352 N.C. 1
 
 , 16,
 
 530 S.E.2d 807
 
 , 817 (2000),
 
 cert. denied
 
 ,
 
 531 U.S. 1083
 
 ,
 
 121 S.Ct. 789
 
 ,
 
 148 L.Ed.2d 684
 
 (2001) ;
 
 see also
 

 Shackleford
 
 , --- N.C.App. at ----,
 
 789 S.E.2d at 18
 
 .
 

 Applying this legal framework, we must first determine whether Respondent made sufficient efforts to reconstruct the hearing in the absence of a transcript. In this regard, Respondent's appellate counsel sent letters to the following persons who were present at the hearing: Judge Meyer; Dr. Brian Robbins ("Dr. Robbins"), Respondent's treating physician at UNC Wakebrook; Lori Callaway ("Callaway"), the deputy clerk; Andrew Hayes ("Hayes"), counsel for the State; Kristen Todd ("Todd"), Respondent's counsel; and Respondent. In these letters, Respondent's appellate counsel requested that each of the recipients provide him with their recollections of the hearing and any notes they possessed regarding the proceeding.
 

 Guided by our decision in
 
 Shackleford
 
 , we believe that Respondent has "satisfied his burden of attempting to reconstruct the record."
 
 Shackleford
 
 , --- N.C.App. at ----,
 
 789 S.E.2d at 19
 
 (citations and quotation marks omitted). In
 
 Shackleford
 
 , as here, there was no transcript available from the involuntary commitment hearing because the recording equipment failed to record the proceeding and there had not been a court reporter present.
 
 Id
 
 . at ----,
 
 789 S.E.2d at 17
 
 . In his effort to reconstruct the record, the respondent's appellate counsel similarly sent letters requesting any notes and recollections from the hearing to the presiding judge, the respondent's treating physician, the deputy clerk, counsel for the inpatient treatment facility at which the respondent was being treated, the respondent's counsel, and the respondent himself.
 
 Id
 
 . at ----,
 
 789 S.E.2d at 18
 
 .
 

 In concluding that the respondent's appellate counsel in
 
 Shackleford
 
 had met his burden of attempting to reconstruct the record, we found our decision in
 
 *113
 

 State v. Hobbs
 
 ,
 
 190 N.C.App. 183
 
 ,
 
 660 S.E.2d 168
 
 (2008), to be particularly instructive:
 

 *68
 
 In
 
 Hobbs
 
 , the court reporter's audiotapes and handwritten notes from the entire evidentiary stage of the defendant's criminal trial were lost in the mail. In an effort to reconstruct the proceedings, the defendant's appellate counsel sent letters to the defendant's trial counsel, the trial judge, and the prosecutor asking for their accounts of the missing testimony. The defendant's trial counsel stated that he had little memory of the charges or the trial, possessed no notes from the trial, and was unable to assist in reconstructing the proceedings. The trial judge stated that she had no notes from the case, and the prosecutor never responded to the inquiry. In light of these efforts, we determined that the appellant [in
 
 Hobbs
 
 ] had satisfied his burden of attempting to reconstruct the record.
 

 Shackleford
 
 , --- N.C.App. at ---- - ----
 
 789 S.E.2d at 18-19
 
 (internal citations omitted).
 

 We explained that because the respondent's appellate counsel in
 
 Shackleford
 
 "took essentially the same steps as the appellant's attorney in
 
 Hobbs
 
 [,] we similarly conclude that [the respondent] has satisfied his burden of attempting to reconstruct the record."
 

 Id.
 

 at ----,
 
 789 S.E.2d at 19
 
 . The same is true in the present case.
 

 Therefore, we must next determine whether Respondent's reconstruction efforts produced an adequate alternative to a verbatim transcript-that is, one that "would fulfill the same functions as a transcript...."
 
 Lawrence
 
 ,
 
 352 N.C. at 16
 
 ,
 
 530 S.E.2d at 817
 
 . As explained below, we conclude that an adequate alternative has, in fact, been produced in this case.
 

 Respondent's appellate counsel received responses from each of the recipients of his letters. Callaway replied that she did not have any notes from the hearing. Dr. Robbins stated that he did not have a specific recollection of the hearing and did not keep any notes from it. Respondent reported that he had no detailed recollection of the hearing. Todd provided her notes from the hearing, which consisted of eight pages of handwritten notes. Hayes replied with a brief summary of the hearing testimony based upon his notes from, and memory of, the hearing.
 

 The most significant response came from Judge Meyer, who provided Respondent's appellate counsel with a detailed account of the testimony offered at the hearing in a five-page, single-spaced, typed memorandum. Judge Meyer stated that the document was "based on his memory of testimony at the hearing after reviewing personal notes of
 
 *69
 
 the hearing made by [him] during the hearing and after additional reflection and recollection." The memorandum contained individual sections detailing the testimony of each witness: Kawana Woodard ("Kawana"), Respondent's sister; Donnie Farrington ("Farrington"), Respondent's father; Dr. Robbins; and Respondent. Judge Meyer's memorandum not only provides support for each finding of fact in the trial court's 12 February 2015 order but also contains even greater detail regarding the testimony supporting these findings.
 
 [2]
 

 The contrast between the results of the attempted reconstruction of the hearing in this case and that in
 
 Shackleford
 
 is significant. In concluding that the reconstruction efforts in
 
 Shackleford
 
 had failed to produce an adequate alternative to a verbatim transcript, we explained that
 

 the only independent account of what took place at the hearing consists of five pages of bare-bones handwritten notes that-in addition to not being wholly legible-clearly do not amount to a comprehensive account
 
 *114
 
 of what transpired at the hearing.
 
 While these notes could conceivably assist in recreating the hearing if supplemented
 

 by other sources providing greater detail
 
 , they are not in and of themselves substantially equivalent to the complete transcript.
 

 Shackleford
 
 , --- N.C.App. at ---- - ----,
 
 789 S.E.2d at 19-20
 
 (internal citation, quotation marks, and brackets omitted and emphasis added).
 

 The present case serves as an example of the precise scenario contemplated in the above-quoted language from
 
 Shackleford
 
 . Here, as in
 
 Shackleford
 
 , Respondent's counsel from the involuntary commitment hearing provided limited handwritten notes referencing witness testimony from the hearing. However, while in
 
 Shackleford
 
 these notes
 
 alone
 
 constituted the product of the respondent's appellate counsel's efforts to reconstruct the proceeding, that is not the case here. Rather, in the present case, these handwritten notes-along with the State's attorney's
 
 *70
 
 summary of the hearing testimony-supplemented the thorough memorandum provided by Judge Meyer. Thus, this case is materially distinguishable from
 
 Shackleford
 
 .
 

 Together, the materials supplied to Respondent's appellate counsel provide the following account of the hearing: Kawana testified that at the beginning of January 2015 Respondent posted false comments on social media, including statements that "I'm a Navy Seal ... I've been raped." She also stated that around this time Respondent had been having altercations with his other two sisters, which was not something that occurred when he was taking his medication and complying with his treatment.
 

 Farrington, with whom Respondent lived, testified that two weeks prior to Respondent's pre-hearing inpatient admission, Respondent constantly fought with his sisters and Farrington and falsely posted on Facebook that he was a "known gang member." Respondent admitted to Farrington that he had made posts regarding gang members and said that he had "beat somebody up." Two men came to Farrington's home to confront Respondent about his social media posts concerning gang members, but Farrington told them to leave because Respondent was sick. Farrington also testified that on the coldest day of December 2014, when the temperature was 17 degrees, Respondent walked from his home to Farrington's workplace (a quarter mile away) wearing nothing but shorts and a t-shirt.
 

 Dr. Robbins, who has been a psychiatrist since 2007 and at the time of the hearing was UNC Wakebrook's medical director, was qualified by the trial court as an expert in psychiatry. Dr. Robbins stated that he had been treating Respondent at UNC Wakebrook for the eight days preceding the hearing. He had also treated Respondent at UNC Wakebrook for 10 days in November 2013.
 

 Dr. Robbins testified that Respondent suffered from schizophrenia, a diagnosis he had reached based on Respondent's November 2013 inpatient admission (during which Respondent "presented with paranoia and delusions, punched walls when frustrated with his treatment, and then improved with medication and treatment") as well as his admission immediately preceding the 12 February 2015 hearing. Dr. Robbins made the following observations regarding Respondent's mental condition at the time of the latter admission:
 

 (a) Respondent having multiple delusions that he is a Navy Seal, that he is being followed by the Black Panthers and the Secret Service, that he is a six time Olympic gold
 
 *71
 
 medalist, that he has microchips implanted in his head, that [UNC] Wakebrook medical staff are trying to "enlist him," that he is President Obama's nephew, and that he is a PhD. with eight degrees; (b) Respondent throwing away most of his clothes and exhibiting disorganized thinking and a "disconnect" between what his family wants and what he wants; (c) Respondent beating on windows during his current inpatient admission; (d) reports by family members of Respondent's altercations with his sisters and other behavior such as Respondent walking long distances in the freezing cold with very little clothes on; and (e) a family history of schizophrenia, to wit, Respondent's mother suffering from schizophrenia.
 

 *115
 
 Dr. Robbins also testified that after Respondent's November 2013 inpatient admission at UNC Wakebrook, he refused to continue taking his medication, claiming that it was unnecessary because he was not mentally ill. During the inpatient admission immediately preceding the 12 February 2015 commitment hearing, UNC Wakebrook medical staff had to force Respondent to take medication because of his refusal to take it voluntarily.
 

 Dr. Robbins further related Respondent's statement that he had gotten into a physical altercation with his sister. According to Dr. Robbins, Respondent also threatened to kill certain law enforcement officers and threatened to punch both Dr. Robbins and a nurse who was trying to give Respondent medication by means of a forced injection. Dr. Robbins explained that medical staff planned to further increase Respondent's dosage because he was "guarded, irritable, and paranoid" and that although he had "shown some decrease in overt threats and delusions," he was "still exhibiting delusional behavior."
 

 Dr. Robbins testified that, in his professional opinion,
 

 Respondent's delusions and latent thoughts of behavior threatening to himself and his family would pose a threat of more altercations with his sister and others if he resides at home with his father, that there is a reasonable probability of Respondent repeating such conduct without additional inpatient treatment followed by outpatient treatment, that outpatient treatment alone is insufficient because of Respondent's pattern of refusing to take his prescribed medication and refusing to comply with follow up appointments and other outpatient treatment
 
 *72
 
 requirements, and that without additional inpatient treatment followed by outpatient treatment Respondent is unable to exercise self-control, judgment and discretion to take care of his medical needs and safety and there is a reasonable probability of Respondent suffering serious physical debilitation without additional inpatient treatment followed by outpatient treatment.
 

 Finally, Dr. Robbins testified as to his recommendation that Respondent undergo 30 days of additional inpatient treatment followed by at least 60 days of outpatient treatment.
 

 Respondent testified that a fight with his sisters had precipitated his most recent inpatient admission. He denied ever claiming that he was a gang member, had been raped, was President Obama's nephew, and had been followed by the Black Panthers or the Secret Service. In addition, Respondent testified that he did not need medication and that it made him bipolar. He further stated that he had threatened Dr. Robbins and the nurse in "self-defense" because he did not want to take any more medication and had stopped taking his medication after his November 2013 admission because of its side effects.
 

 Respondent also denied that he was schizophrenic or mentally ill but admitted he was "just bi-polar at times." He testified that he would not take medication if the dosage was too high because that would adversely affect his ability to get a job. He stated that when he walked to Farrington's workplace on the cold December day, he was wearing a coat over his basketball shorts and t-shirt. Finally, Respondent denied that he had (1) threatened to kill any law enforcement officers or told Dr. Robbins he had done so; or (2) punched or beat on a window at UNC Wakebrook.
 

 We observe that the above-referenced testimony provides support for all of the trial court's findings of fact. While Respondent notes that Judge Meyer's memorandum does not specifically indicate whether any objections were made to evidence presented at the hearing, given that no mention of evidentiary disputes are reflected either in that memorandum or in the accounts provided by the attorneys who were present at the hearing, we are unwilling to deem the reconstructed record inadequate simply because of the theoretical possibility that one or more rulings might have been made by the trial court at the hearing in response to objections by counsel.
 

 As the differing results we have reached in
 
 Shackleford
 
 and the present case aptly demonstrate, the issue of whether an attempted
 
 *73
 
 reconstruction of a proceeding is
 
 *116
 
 sufficient to preserve the right to meaningful appellate review does not lend itself to clear, bright-line rules. Rather, such a determination must be made on a case-by-case basis depending on the unique circumstances of each particular case.
 

 Accordingly, we conclude that because Respondent has been able to obtain an adequate alternative to a verbatim transcript of his involuntary commitment hearing, he cannot show he was prejudiced by the absence of an actual transcript. Consequently, he was not deprived of the opportunity for meaningful appellate review of his involuntary commitment hearing.
 
 [3]
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's 12 February 2015 order.
 

 AFFIRMED.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [1]
 

 We note that although Respondent's commitment period has expired, his appeal is not moot given the "possibility that [R]espondent's commitment in this case might ... form the basis for a future commitment, along with other obvious collateral legal consequences[.]"
 
 In re Hatley
 
 ,
 
 291 N.C. 693
 
 , 695,
 
 231 S.E.2d 633
 
 , 635 (1977).
 

 [2]
 

 While Judge Meyer acknowledged in a prefatory statement that his memorandum was not intended to be a comprehensive account of every aspect of the hearing, in light of the detail contained therein and the obvious care with which the document was prepared, we are satisfied that his memorandum, as supplemented by the notes and summary provided by the two attorneys who participated in the hearing, is sufficient to constitute an adequate alternative to a verbatim transcript. As we have previously explained, "notwithstanding the critical importance of a complete trial transcript for effective appellate advocacy, the unavailability of a verbatim transcript does not automatically constitute error."
 
 Hobbs
 
 ,
 
 190 N.C.App. at 186
 
 ,
 
 660 S.E.2d at 170
 
 (citation, quotation marks, and brackets omitted).
 

 [3]
 

 We note that appellants who assert on appeal that they have been deprived of the ability to obtain meaningful appellate review due to the unavailability of a verbatim transcript from a trial court proceeding may also argue, in the alternative, specific errors that appear on the face of the order from which appeal is being taken or errors that are discovered as a result of an attempt to reconstruct the proceeding. However, Respondent has not raised any such specific errors in the present case.